771 P.2d 166

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Ronald Edward "Cyrus" HARGROVE,
Defendant–Appellant.**

**No. 17559.**

Supreme Court of New Mexico.

March 21, 1989.

Jacquelyn Robins, Chief Public Defender, Lynne Fagan, Appellate Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Margaret Mc-Lean, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

RANSOM, Justice.

The defendant, Ronald E. "Cyrus" Hargrove, appeals from his convictions on four counts of incest and four counts of criminal sexual penetration. Hargrove received two life sentences plus twenty-seven years. His assignments of error charge impropriety in the imposition of the life sentences, erroneous jury instructions, improper conviction under the general criminal sexual penetration statute, and various violations of his right to a fair trial and due process. We affirm in part and reverse in part, which results in a reduction of the sentence to two life sentences plus twenty-one years.

The defendant was charged in 1986 and tried in 1987. The charges stemmed from his activities as a self-styled messiah who, with the help of two of his other followers, published a religious tract entitled *Oracle to the Nations*. He professed that a person proved a love of God by giving of oneself sexually. The defendant openly practiced sex with his young daughters, Rebecca and Rachel, and a wife of one of his followers. Evidence of the defendant's mental state was adduced at trial and the jury resolved that he was not legally insane. The jury also was instructed that it could find the defendant guilty but mentally ill, but it determined otherwise.

As an initial procedural matter, we address the State's objection to the submission on appeal of the defendant's handwritten personal statement. The State correctly points out that the statement was not part of the record below, was not subject to cross-examination, and should not be considered on appeal. Upon further reflection, we believe that our leave to submit this statement was improvidently granted. The defendant's personal statement will be stricken from the appellate record.

█ The defendant contends that the life sentences imposed for two of his convictions should be reduced to eighteen years each. Specifically, the defendant was convicted on two counts of criminal sexual penetration of a child under thirteen years of age, which is a first degree felony. *See* NMSA 1953, § 40A–9–21(A) (Vol. 6, 2d Repl., Pocket Supp.1975); NMSA 1978, § 30–9–11(A)(1) (Repl.Pamp.1984 & Cum. Supp.1988). The charged offenses were perpetrated on December 25, 1976, and May 7, 1978. Under the sentencing law as it existed in 1976 and 1978, a first degree felony called for life imprisonment. *See* NMSA 1953, § 40A–29–3 (Vol. 6, 2d Repl. 1972). Effective July 1, 1979, however, the basic sentence for a first degree felony was changed to eighteen years. N.M.Laws 1979, ch. 152, § 1.

To support his argument, the defendant relies upon NMSA 1978, Section 31–18–13 (Repl.Pamp.1987), which states that "[u]nless otherwise provided in this section, all persons convicted of a crime under the laws of New Mexico shall be sentenced in accordance with the provisions of the Criminal Sentencing Act [31–18–12 to 31–18–21 NMSA 1978]." The defendant maintains that the language mandates that he be sentenced under the new act, as opposed to the old law, because he is a person who was charged and convicted after the Criminal Sentencing Act became effective. The defendant also cites authority for the proposition that where an amendatory statute mitigates punishment, the lighter sentence should be imposed, rather than the sentence in force when the offense was committed. *See, e.g., In re Fink*, 67 Cal.2d 692, 63 Cal.Rptr. 369, 433 P.2d 161 (1967) (in bank); *In re Estrada*, 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948 (1965) (in bank); *People v. Oliver*, 1 N.Y.2d 152, 134 N.E.2d 197, 151 N.Y.S.2d 367 (1956).

The defendant's reliance on Section 31–18–13 as well as on his cited authority is

misplaced. The legislature specifically enacted a transitional rule to provide sentencing guidelines for crimes committed prior to the enactment of the Criminal Sentencing Act. 1977 N.M.Laws, Chapter 216, Section 18, states that "[t]he provisions of * * * [the Criminal Sentencing Act] apply only to persons sentenced for crimes committed on or after its effective date. Prior law remains effective with respect to persons sentenced for crimes committed prior to the effective date of this act * * *." The defendant acknowledges that the creation of penalties and their application is the exclusive prerogative of the legislature. *See State v. Peters*, 78 N.M. 224, 430 P.2d 382 (1967). The legislature clearly expressed its intent that for crimes committed prior to July 1, 1979, the sentencing provision in effect at the time of the commission of the crime controls. *See Estrada*, 63 Cal.2d at 747, 48 Cal.Rptr. at 177, 408 P.2d at 953 (a saving clause expressly providing that the old law should continue to operate as to past acts controls so far as punishment is concerned). Accordingly, we will not disturb the imposition of a life sentence for each conviction of first degree criminal sexual penetration committed prior to July 1, 1979.

█ The defendant also seeks reversal of his convictions for incest. The defendant contends that the trial court failed to instruct the jury properly on an essential element of the offense. *See Ortiz v. State*, 106 N.M. 695, 749 P.2d 80 (1988) (if instructions fail to apprise jury on essential element of an offense, reversible error has been committed). In New Mexico, there is no uniform jury instruction for incest. The jury was instructed as follows:

> For you to find the defendant guilty of incest as charged in Count _____, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
> 1. The defendant had sexual intercourse with _____;
> 2. That _____ was the daughter of the defendant;
> 3. This happened in New Mexico on or about the _____ day of _____.

The blanks above contained the number of the appropriate count, the name of either Rebecca or Rachel Hargrove, and the date of the alleged commission of the offense.

The defendant argues that the jury should have been instructed that it had to find that the defendant had knowledge of the prohibited degree of consanguinity. NMSA 1978, Section 30-10-3 (Repl.Pamp. 1984) states: "Incest consists of knowingly * * * having sexual intercourse with persons within the following degrees of consanguinity: parents and children * * *." *See State v. Hittson*, 57 N.M. 100, 254 P.2d 1063 (1953) (where this Court recognized knowledge of the prohibited relationship as an element of incest); *see also, e.g., State v. Moore*, 242 Kan. 1, 748 P.2d 833 (1987) (aggravated incest requires that prohibited sex act be performed with victim under eighteen who is within required degree of kinship, and offender is aware of relationship); *State v. Vincent*, 278 N.C. 63, 178 S.E.2d 608 (1971) (sexual intercourse with woman or girl whom defendant knows to be his daughter constitutes incest).

The State initially responds that the defendant failed to raise and preserve any alleged error. Four months before trial, the public defender who then represented the defendant filed a requested knowledge instruction for the incest counts involving each daughter, as well as an instruction that specifically stated that proof of blood relationship is an essential element. *See State v. Garcia*, 100 N.M. 120, 666 P.2d 1267 (Ct.App.) (by tendering a legally correct statement of the law, defendant preserves trial court's error in failing to give proper instruction), *cert. denied*, 100 N.M. 192, 668 P.2d 308 (1983). However, the public defender contemporaneously moved for and was granted withdrawal of her representation and, at trial, during the review of jury instructions, the defendant's counsel assented to instructions that omitted the essential element of knowledge. The trial court was not called upon to rule on the earlier requests. To preserve error in the failure of the court to give a proper instruction, it is necessary to call the tendered instruction to the attention of the

court for a ruling. SCRA 1986, 5–608(D); *Budagher v. Amrep Corp.*, 97 N.M. 116, 637 P.2d 547 (1981), *appeal after remand*, 100 N.M. 167, 667 P.2d 972 (Ct.App.), *cert. denied*, 100 N.M. 192, 668 P.2d 308 (1983).

The State concedes that failure to instruct on an essential element may be raised for the first time on appeal, *see State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977), but maintains that the jury instructions, read as a whole, properly included the essential elements of the crime of incest. The State argues that the jury was instructed on the definition of "intentionally" and asserts that "intentionally" is an adequate substitute for "knowingly". We do not agree that the instruction, which informs the jury of the necessity to find general criminal intent in addition to the other elements of the charged offense, SCRA 1986, 14–141, was sufficient to instruct the jury that knowledge of the prohibited blood relationship is an essential element of incest. As stated in *Hittson*, "the free act of the one being tried, *with knowledge of the relationship*" is required to convict one of incest. 57 N.M. at 102–03, 254 P.2d at 1065 (emphasis added). Knowledge and intent are separate, not synonymous, elements.

■ The failure to give an instruction on an essential element is jurisdictional and reversible error unless the defendant affirmatively has conceded the facts underlying the essential element. *Ortiz*, 106 N.M. at 698, 749 P.2d at 83. In this case, if the defendant's knowledge that he was the father of either Rebecca or Rachel was not factually in issue, then the error in the instruction would be nonjurisdictional and would require proper preservation for review. *Cf. Bell*, 90 N.M. at 140, 560 P.2d at 931 (decision resting on either "not factually at issue" or "subsidiary fact" rationale).

At oral argument, a question also was raised concerning whether prohibited relationships under Section 30–10–3 include a child fathered by someone other than the defendant during defendant's marriage to the mother. The relevance of this question stemmed from defendant's testimony that, at the time of the offense, he believed Rebecca to have been fathered by another man during the time the defendant was married to Rebecca's mother. If the defendant's knowledge that he was the biological father of Rebecca was factually in issue, then error in failure to instruct on the essential element of knowledge would be jurisdictional and should be considered by us notwithstanding defense counsel's decision, tactically or otherwise, to have Rachel and Rebecca treated alike.

A majority of jurisdictions have incest statutes that prohibit engaging in sexual intercourse with stepchildren.[1] *See, e.g.,* Ala.Code § 13A–13–3 (1988); Ark.Stat.Ann. § 5–26–202 (1987); Colo.Rev.Stat. § 18–6–301 (Repl.Vol.1986); Del.Code Ann. titl. 11, § 766 (Repl. Vol.1987); Ky.Rev. Stat.Ann. § 530.020(1) (Michie Repl.1985); Mont.Code Ann. § 45–5–507 (1987); Wash. Rev.Code Ann. § 9A.64.020 (West 1988). The prohibition against consanguineous incest serves the policy objectives of preventing the unhealthy genetic consequences of interbreeding, promoting family harmony, and protecting children from abuse of parental authority. *See* C. Torcia, *Wharton's Criminal Law* § 242 (14th ed. 1979). Incest statutes that also criminalize sexual intercourse between step relations serve the latter two policy objectives. *See id.* at § 245, at 407 n. 30.

The language of our incest statute, however, precludes such an application. A criminal statute is to be construed strictly. *State v. Allen*, 77 N.M. 433, 423 P.2d 867 (1967); *see also State v. Moore*, 158 Conn.

---

1. We recognize that the term "stepchild" to describe the status of a child who was born during marriage but who was not the issue of the husband is not technically correct. A stepchild is a child of one's wife or husband by a former marriage. *Webster's Third New International Dictionary* 2237 (1981). For purposes of addressing the parameters of Section 30–10–3, however, we believe that any prohibition against sexual intercourse with a stepchild would include a prohibition against intercourse with a child who was born during marriage but who was not the issue of the husband. Therefore, we look to those states that include step relations within the prohibition of their incest statutes for guidance in determining whether our statute can be read to include the same prohibition.

461, 262 A.2d 166 (1969). Further, words used in a statute are to be given their ordinary and usual meaning unless a different intent is clearly indicated. *Schmick v. State Farm Mut. Auto Ins. Co.*, 103 N.M. 216, 704 P.2d 1092 (1985). The term "consanguinity" admits of only one plain meaning. It is the relationship by descent from the same stock or common ancestor; related by blood. *Black's Law Dictionary* 275 (5th ed. 1979); *Oxford English Dictionary* 845 (Vol. II 1970); *Webster's Third New International Dictionary* 482 (1981). "Consanguinity" is to be distinguished from "affinity", which pertains to relationships formed by marriage. *State v. Geddes*, 101 N.H. 164, 136 A.2d 818 (1957). Section 30–10–3 is directed toward prohibiting sexual intercourse between specific relations within the blood line. Those statutes that further prohibit sexual intercourse between specific relationships within the family regardless of any sharing of blood do not speak exclusively in terms of consanguinity, but rather specifically address relationships created by affinity and/or adoption.

Concerning Rachel, we conclude that the issue of whether the defendant knew that she was his biological daughter never was factually in issue. On direct examination, the defendant stated that he did not have sexual relations with Rachel because he knew that she was his daughter. From the testimony adduced at trial, it appears that the defendant affirmatively conceded the issue of knowledge. Consequently, the failure to instruct on this essential element for Counts I and VII was not jurisdictional error and any defect in the instruction was not preserved because at trial the defendant neither tendered proper instructions nor objected to the ones submitted. *See Bell*, 90 N.M. at 143, 560 P.2d at 934.

Rebecca presents a different case. The defendant testified that he believed he did not father Rebecca, although at trial he acknowledged that he now accepted her as his biological daughter based upon the result of blood tests conducted in preparation of trial. The issue, however, was whether the defendant knew Rebecca was his biological daughter when the acts of sexual intercourse charged in Counts II and VIII were committed. The defendant's testimony that at one time he believed Rebecca to be his "adopted" daughter demonstrates that the defendant did not concede that at the time he had intercourse with Rebecca he knew she was his biological daughter. Accordingly, the failure to instruct the jury that, as an essential element of incest in Counts II and VIII, it had to find beyond a reasonable doubt that the defendant had knowledge of the prohibited blood relationship requires that the convictions on those counts be reversed.

■ The defendant further maintains that his convictions for criminal sexual penetration must be reversed because the incest statute, Section 30–10–3, is the more specific statute, and the State, consequently, properly could not charge and convict him under Sections 30–9–11(A)(1) and (B)(1), the more general criminal sexual penetration statutes. Relying upon *State v. Blevins*, 40 N.M. 367, 60 P.2d 208 (1936), the defendant contends that where a more specific statute exists, the state does not have the authority to prosecute under the general statute. *See id.* at 368, 60 P.2d at 209. In *Blevins*, the defendant was convicted of selling, without authorization, neat cattle. The defendant was charged under the general statute that made it a crime to sell the property of another without authorization, rather than under a statute specifically outlawing the unauthorized sale of neat cattle. The Court reversed the conviction concluding that because each statute prohibited the unauthorized sale of the property of another, "they describe but one offense, and, one of such statutes being special and the other general, the special statute should control to the extent of compelling the state to prosecute under it." *Id.* at 369, 60 P.2d at 210.

Here, the defendant argues that the offense of criminal sexual penetration under Sections 30–9–11(A)(1) and (B)(1) concerns the general subject of sexual intercourse with children whereas the incest statute more specifically addresses the prohibition of sexual intercourse between fathers and daughters, the situation involved in this

case. The flaw in the defendant's argument rests in his assertion that both statutes condemn the same offense. *See State v. Ross*, 104 N.M. 23, 25, 715 P.2d 471, 473 (Ct.App.1986) ("In order for a specific offense to prevail over the more general crime, the two statutes must proscribe the same act."). Criminal sexual penetration and incest have different elements and are distinct crimes even though one offense can occur simultaneously with the commission of the other. *See Moore*, 242 Kan. at 4–5, 748 P.2d at 835–36; *State v. Harvell*, 45 N.C.App. 243, 262 S.E.2d 850, *appeal dismissed*, 300 N.C. 200, 269 S.E.2d 626 (1980).

> The gravamen of the crime of incest, as of rape, is the unlawful carnal knowledge. In rape it is unlawful because accomplished by unlawful means. In incest it is unlawful, without regard to the means, because of consanguinity or affinity. Where both the circumstances of force and consanguinity are present * * * it is not less incest because the element of rape is added, and it is not less rape because perpetrated upon a relative.

*Hittson*, 57 N.M. at 102, 254 P.2d at 1065 (quoting *People v. Stratton*, 141 Cal. 604, 75 P. 166, 167 (1904)).

In the present case, proof of two distinct elements was necessary to find the defendant guilty of the charged offenses of criminal sexual penetration and incest, respectively. The latter offense required a showing of the defendant's knowledge that he had sexual intercourse with someone within the prohibited degree of consanguinity. The former required a showing that the defendant had sexual intercourse with a child under the age of thirteen, Section 30–9–11(A)(1), or alternatively, used his position of authority to coerce a child between the ages of thirteen and sixteen to engage in sexual intercourse, Section 30–9–11(B)(1). For the incest offense, the age of the relation within the prohibited degree of consanguinity was immaterial. For purposes of criminal sexual penetration, the relationship of the victim to the defendant was immaterial (the victim not being the defendant's legal spouse).

Furthermore, each statute is directed toward achieving different policy objectives. The sanction against the criminal sexual penetration of children is to punish engaging in sexual intercourse with those who, because of age, are incapable to decide freely whether they want to engage in such conduct. The purpose of prohibiting incest is to prevent sexual intercourse between close relatives. There was no error in charging this defendant on separate counts of criminal sexual penetration and incest under a theory that he had sexual intercourse with a child under thirteen years of age and a child between thirteen and sixteen years of age, and he knew each was his biological daughter.

■ The defendant also submits that various alleged errors in the trial process violated his constitutional rights. He first contends that the trial court's refusal to allow him to read aloud from the *Oracle to the Nations* denied him the right to present his defense in violation of due process. *See In re Miller*, 88 N.M. 492, 542 P.2d 1182 (Ct.App.), *cert. denied*, 89 N.M. 5, 546 P.2d 70 (1975); *see also* N.M. Const. art. II, § 14. The trial court disallowed the defendant's reading of the *Oracle* to the jury because it was already an admitted exhibit and an oral presentation would have been unnecessarily time-consuming. The defendant acknowledges that a trial judge has the discretion to control trial proceedings to avoid the needless consumption of time and to allow for the effective presentation of evidence. *See State v. Hovey*, 106 N.M. 300, 303, 742 P.2d 512, 515 (1987). The defendant further recognizes that, absent an abuse of discretion, we will not disturb a trial court's ruling on the admission of evidence. *See State v. Smith*, 92 N.M. 533, 537, 591 P.2d 664, 668 (1979).

The defendant's contention that the trial court's decision was an abuse of discretion is without merit. In *Hovey*, the defendant claimed that the trial court abused its discretion by limiting the number of diary entries that could be read to the jury and explained by the defendant. All sixteen hundred diary entries were admitted into

evidence and available to the jury. This Court found that the defendant was not deprived of an opportunity to present his defense because he was able to argue that the diary entries showed normal teenage behavior. 106 N.M. at 303, 742 P.2d at 515. Here, as part of his defense, the defendant was able to testify about the religious tenets embodied in the *Oracle* and to express his religious beliefs. To have allowed the defendant to read the *Oracle* aloud to the jury as well would have been needlessly cumulative. The trial court properly exercised its discretion pursuant to SCRA 1986, 11–611.

■ The defendant next asserts that evidence of another doctor's opinion that the defendant was not psychotic or schizophrenic, but was a legally responsible person, which was elicited from the state's rebuttal expert, was inadmissible hearsay and violated his right of confrontation. *See Coulter v. Stewart,* 97 N.M. 616, 642 P.2d 602 (1982) (experts may rely on hearsay under SCRA 1986, 11–703, but the hearsay itself is inadmissible). We initially note that no objection to the expert's testimony was raised at trial. Under SCRA 1986, 12–216, failure to preserve a question by fairly invoking a decision by the trial court precludes appellate review.

One exception to that rule is where the claimed error is fundamental. We do not see that the error here was fundamental. The defendant has presented no argument that the admission of these statements went to the foundation of his case and deprived him of rights essential to his defense. *See Smith v. State,* 79 N.M. 450, 444 P.2d 961 (1968). Admittedly, the out-of-court statement that the defendant was a legally responsible person undermined his insanity defense. However, the defendant was not prevented from cross-examining the state's rebuttal expert and calling into question the bases upon which he formed his opinion that the defendant was not legally insane. Furthermore, the defendant was able to present his own expert in support of his insanity defense. The doctrine of fundamental error "is not to be exercised in aid of strictly legal, technical or

unsubstantial claims. Where substantial justice has been done, the parties must have taken and preserved exceptions in the lower court before this court will notice them on appeal." *Id.* at 453, 444 P.2d at 964 (quoting *State v. Lucero,* 70 N.M. 268, 272, 372 P.2d 837, 840 (1962)).

■ The defendant further maintains that the failure to grant his motion for a change of venue denied him due process and a fair trial. It is within the sound discretion of the trial court to grant or deny a motion for change of venue. A ruling on such motion will not be disturbed absent a showing of abuse of discretion, and the burden of showing such abuse rests on the movant. *State v. Rushing,* 85 N.M. 540, 514 P.2d 297 (1973).

The defendant has failed to carry that burden. His allegation of abuse of discretion rests upon the trial court's impaneling of jurors who admitted having been exposed to some publicity about the case but stated that they could be fair and impartial and would determine the case based on the evidence presented at trial. The constitutional standard of fairness does not require that jurors be totally ignorant of the facts and issues of the case. *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). Furthermore, the defendant has made no showing that any of the jurors who actually heard the case were in any way tainted by the publicity. *See Deats v. State,* 80 N.M. 77, 80, 451 P.2d 981, 984 (1969). Without more, we cannot say that the trial court abused its discretion in denying the defendant's motion for a change of venue.

Finally, the defendant asserts that there was insufficient evidence to support his convictions. Specifically, the defendant contends that the evidence did not demonstrate that he *used* his position of authority to coerce a child between thirteen and sixteen years of age to engage in sexual intercourse. *See* § 30–9–11(B)(1). Without detailing the extensive evidence regarding the defendant's conduct toward Rebecca and Rachel, suffice it to say our review of the record belies this contention. There

was ample evidence to support each of the defendant's convictions.

We affirm the defendant's convictions on the charges of criminal sexual penetration, and on the charges of incest for Counts I and VII, but reverse and remand for a new trial on the charges of incest for Counts II and VIII.

IT IS SO ORDERED.

SOSA, C.J., and STOWERS, SCARBOROUGH and BACA, JJ., concur.