This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                          **NO. 28,711**

**MICHAEL ANTHONY  SILVA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Carl J. Butkus, District Judge**

Gary K. King, Attorney General
Farhan Khan, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Offices of Nancy L. Simmons, P. C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

Defendant appeals his multiple convictions for criminal sexual penetration,

kidnaping, aggravated burglary, aggravated battery, criminal sexual contact, larceny, attempted criminal sexual penetration, and aggravated assault. Defendant argues that (1) the district court erred in admitting statistical DNA testimony at trial; (2) the district court erred in applying the crimes against the elderly enhancement; and (3) there was insufficient evidence to sustain Defendant's conviction for attempted CSP (Count 25 of the indictment). We affirm regarding admission of DNA testimony and the application of the elderly enhancement statute. We reverse and vacate the sentence with regard to Count 25.

**BACKGROUND**

In 2001, Defendant entered the separate homes of three different women and committed multiple criminal acts. The State and Defendant agree on the basic facts underlying the incidents. We therefore need not recount the details of all three cases for purposes of this opinion, but will instead limit our recitation of the facts to those facts necessary for resolution of the issues raised by Defendant. Defendant was charged with thirty-nine criminal counts, including criminal sexual penetration, kidnaping, aggravated burglary, aggravated battery, criminal sexual contact, larceny, interference with communications, attempted criminal sexual penetration, and aggravated assault. The victims were three Albuquerque women who were ages ninety-four, fifty-nine, and seventy-two at the time of the crimes. The trials were

2

severed as to each alleged victim. DNA evidence linked Defendant to all three victims, and a DNA expert testified in each case. Defendant objected to the foundation for this testimony at all three trials.

After three juries found Defendant guilty of multiple counts, the cases were consolidated for sentencing purposes. The district court vacated several counts, finding that they were subsumed within other counts. Defendant was ultimately sentenced to 220 years, less 7 days.

**DISCUSSION**

**Testimony Regarding DNA Evidence**

Pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), and *State v. Boyer*, 103 N.M. 655, 658-60, 712 P.2d 1, 4-6 (Ct. App. 1985), Defendant argues that the district court erred in allowing testimony regarding the statistical calculations underlying a DNA match to be submitted to the jury. Defendant maintains that there was a lack of a proper foundation to elicit such testimony. He also argues that the testimony was more prejudicial than probative.

Because "admission of expert testimony or other scientific evidence is peculiarly within the sound discretion of the [district] court," we will not reverse a district court's ruling absent a showing of abuse of discretion. *State v. Alberico*, 116 N.M. 156, 169, 861 P.2d 192, 205 (1993). "An abuse of discretion occurs when the

3

ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). We also leave a determination of whether the prejudicial impact of evidence outweighs its probative value to the discretion of the district court. *Id.* ¶ 48. In determining whether the district court abused its discretion, we consider the probative value of the evidence, but we do not necessarily require exclusion based on the fact that some jurors might find the evidence offensive or inflammatory. *Id.*

We decline to address Defendant's argument on this issue because he provided no facts or legal authority in support of his argument. We will not consider an issue if no supporting authority is cited because, absent cited authority, we assume no such authority exists. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). Instead, we presume that rulings or decisions of the district court are correct, and the party claiming error bears the burden of showing such error. *State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211.

We see no error in the district court's admission of the DNA testimony in this case. New Mexico law requires that the district court "establish the reliability of scientific knowledge." *State v. Lente*, 2005-NMCA-111, ¶ 4, 138 N.M. 312, 119 P.3d

4

737. New Mexico case law has also recognized that DNA testing has been generally accepted in the scientific community. *State v. Anderson*, 118 N.M. 284, 300-01, 881 P.2d 29, 45-46 (1994) (addressing the FBI's method for determining the probability of a coincidental DNA match); *State v. Stills*, 1998-NMSC-009, ¶ 31, 125 N.M. 66, 957 P.2d 51 (stating that any remaining controversy over the results of the DNA testing goes to the weight of the evidence). Given this authority, it does not appear that the district court abused its discretion when it permitted the DNA testimony in this case. Consequently, we affirm the district court's admission of testimony regarding the statistical calculations underlying a DNA match.

**Application of the Elderly Enhancement Statute**

On December 28, 2005, the State charged Defendant with thirty-nine criminal counts and applied elderly enhancements under NMSA 1978, Section 31-18-16.1 (1993) (repealed 2003), to the following charges: criminal sexual penetration, kidnaping, aggravated burglary, aggravated battery, attempted criminal sexual penetration, and criminal sexual contact. In the two trials involving victims who were sixty years of age or older at the time the crimes were committed, the district court permitted juries to consider enhancing Defendant's sentence for many of the counts under the elderly enhancement statute. Both juries found the requisite factual findings to apply the elderly enhancement, and Defendant received elderly enhancements for

eleven of the counts for which he was convicted.

Defendant argues that the district court erred in applying the elderly enhancement statute. In 2003, the Legislature simultaneously repealed the elderly enhancement statute and replaced it with the Hate Crimes Act, NMSA 1978, Sections 31-18B-1 to 5 (2003), for crimes based upon certain identified categories, including age. 2003 N.M. Laws, ch. 384, §§ 1-7. The parties agree that the elderly enhancement statute was in place at the time the offenses were committed; however, the statute was repealed before Defendant was charged with any crime.

We review issues of statutory interpretation de novo. *State v. Duhon*, 2005-NMCA-120, ¶ 10, 138 N.M. 466, 122 P.3d 50. When interpreting statutory language, our primary goal is "to give effect to the intent of the [L]egislature." *State v. Torres*, 2006-NMCA-106, ¶ 8, 140 N.M. 230, 141 P.3d 1284. We apply a de novo standard of review when reviewing the legality of a sentence under a statute. *State v. Brown,* 1999-NMSC-004, ¶¶ 7-8, 126 N.M. 642, 974 P.2d 136.

The elderly enhancement statute provided that "[w]hen a separate finding of fact by the court or jury shows that in the commission of a noncapital felony a person sixty years of age or older . . . was intentionally injured, the basic sentence . . . shall be increased." Section 31-18-16.1. The statute permitted either a one-year or two-year enhancement, depending on the existence or absence of great bodily harm and/or

the presence of a deadly weapon. *Cf.* Sections 31-18-16.1(A) (1) through (2). The statute was repealed and replaced with the Hate Crimes Act, which states that "[w]hen a separate finding of fact by the court or jury shows beyond a reasonable doubt that an offender committed a noncapital felony motivated by hate, the basic sentence . . . may be increased by one year." Section 31-18B-3. "[M]otivated by hate" is defined as "the commission of a crime with the intent to commit the crime because of the actual or perceived race, religion, color, national origin, ancestry, *age*, handicapped status, gender, sexual orientation or gender identity of the victim, whether or not the offender's belief or perception was correct." Section 31-18B-2(D) (emphasis added).

Defendant argues that under *State v. Lucero*, the elderly enhancement statute should not have been applied because Defendant's case was not pending at the time the statute was repealed. 2007-NMSC-041, ¶ 20, 142 N.M. 102, 163 P.3d 489 (holding that the elderly enhancement statute did apply under the circumstance where the defendant's case was pending at the time the statute was repealed). We disagree. *Lucero* relied upon Article IV, Section 34 of the New Mexico Constitution, which provides that "[n]o act of the [L]egislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case." *Lucero*, 2007-NMSC-041, ¶ 14 (internal quotation marks and citation omitted). In addition, *Lucero* identified an important factor in this analysis when it noted that the "elements

of a crime" contained in the elderly enhancement statute must be determined by the jury's "factual findings, beyond a reasonable doubt . . . *at the time the offense was committed*." *Id.* ¶ 17. The Supreme Court also affirmed its longstanding position that "the law, at the time of the commission of the offense, is controlling." *Id.* ¶ 14 (internal quotation marks and citation omitted). In *State v. Allen*, the Court held that the punishment defined within the version of the first degree murder statute that was in effect at the time of the commission of the crime was controlling. 82 N.M. 373, 374, 482 P.2d 237, 238 (1971). Similarly, in *State v. Armstrong*, the Court determined that an amendment to the Parole Act did not change the statutory penalty for the underlying crime of manslaughter, and that the applicable penalty for manslaughter was the penalty in effect at the time the crime was committed. 61 N.M. 258, 260-61, 298 P.2d 941, 942-43 (1956).

This position is applicable to Defendant's case under Article IV, Section 33 of the New Mexico Constitution, which states that "[n]o person shall be exempt from prosecution and punishment for any crime or offenses against any law of this state by reason of the subsequent repeal of such law." N.M. Const. art. IV, § 33; *see State v. Shay*, 2004-NMCA-077, ¶ 18, 136 N.M. 8, 94 P.3d 8 (recognizing that Section 33 only applies where the Legislature repeals a law proscribing a crime or offense). Section 31-18-16.1 contains the elements of a crime and requires a jury to make

specific findings regarding the alleged offense against the elderly. *Lucero*, 2007-NMSC-041, ¶ 17. Consistent with *Allen* and *Armstrong*, we determine that Article IV, Section 33 would apply to any repeal of a statute defining the elements and punishment for an underlying criminal offense charged against an accused. The determination of when the elements of such an offense are pending for factual determination must be made at the time the offense was committed, pursuant to the specific language in the elderly enhancement statute. *Lucero*, 2007-NMSC-041, ¶ 17. Therefore, Defendant's elderly enhancement offense was not exempt from prosecution by reason of the subsequent repeal of the elderly enhancement law.

Defendant's reliance upon several cases dealing with the habitual offender enhancement under Section 31-18-17 is misplaced. *See Shay*, 2004-NMCA-077; *State v. Stanford*, 2004-NMCA-071, 136 N.M. 14, 94 P.3d 14. As we noted in *Shay*, the definition of "pending" for the purpose of Article IV, Section 34, depends on the statute in question. 2004-NMCA-077, ¶ 20. Under our habitual offender statute, a person must be convicted of a noncapital felony before the habitual offender enhancement can be applied. *Lucero*, 2007-NMSC-041, ¶ 17. Conviction is a prerequisite; therefore, this "[enhancement] is entirely contingent upon and does not ripen until a defendant is convicted of a crime." *Shay*, 2004-NMCA-077, ¶ 20. Consequently, the habitual offender proceeding in *Shay* was not pending until a

supplemental information was filed following conviction, and only thereafter did "the issue of habitual offender status . . . need[] to be decided." *Id.* As a result, a habitual offender enhancement is clearly distinguished from an elderly enhancement offense. The habitual enhancement is strictly a sentencing statute that does not ripen until after a conviction and contains no factual elements associated with the time an underlying offense was committed. In contrast, the elderly enhancement statute contains elements of a crime which require that findings be made at the time the offense was committed. Defendant's reliance upon the analysis of the habitual offender enhancement under *Shay* and *Stanford* was also distinguished in *Lucero*. 2007-NMSC-041, ¶¶ 17-18. *Lucero* is controlling and requires that the determination of when the elderly enhancement offense is ripe for imposition against Defendant be established at the time that the offense was committed. *Id.* Therefore, the elderly enhancement statute was properly applied to Defendant's case because the elements of the offense were pending for factual determination at the time the offense was committed, and the statute was not repealed until several years later.

**Attempted Criminal Sexual Penetration (Count 25)**

At trial, Defendant moved for a directed verdict as to Count 25, but that request was denied. Defendant argues that there was insufficient evidence to sustain his conviction for attempted criminal sexual penetration. Specifically, Defendant argues

that there was a lack of evidence that he committed an overt act in furtherance of this crime.

In reviewing the sufficiency of the evidence, we analyze "whether direct or circumstantial substantial evidence exists and supports a verdict of guilt beyond a reasonable doubt with respect to every element essential for conviction. We determine whether a rational factfinder could have found that each element of the crime was established beyond a reasonable doubt." *State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86 (citations omitted). We "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

Section 30-28-1 defines attempt to commit a felony as "an overt act in furtherance of and with intent to commit a felony and tending but failing to effect its commission." NMSA 1978, § 30-28-1 (1963). Criminal sexual penetration is defined as "the unlawful and intentional causing of a person to engage in sexual intercourse, cunnilingus, fellatio or anal intercourse or the causing of penetration, to any extent and with any object, of the genital or anal openings of another, whether or not there is any emission." NMSA 1978, § 30-9-11(A) (1995) (amended 2009). It is undisputed that the act underlying Count 25 was an alleged attempt to cause one of

11

the victims (Victim), to engage in anal intercourse. Consequently, we review whether there was sufficient evidence that Defendant committed an overt act to further the unlawful and intentional causing of Victim to engage in anal intercourse.

The parties agree regarding the basic facts. Defendant broke into Victim's home. He then ripped her clothes, beat her up, struck her with a fireplace tool, blindfolded her, and tied her up. Defendant proceeded to rub oil on her upper torso and then vaginally and orally penetrated Victim, although the timing of the oral rape is somewhat unclear.

Defendant subsequently told Victim that he wanted her to accompany him into the bedroom and informed her that he wanted to have anal sex with her. Victim refused to accompany Defendant into the bedroom. Defendant then apparently continued to rummage through Victim's house, eventually leaving with approximately $8,000.

Defendant does not challenge the sufficiency of the evidence for the convictions stemming from the vaginal and oral penetration. He only challenges the sufficiency of the evidence regarding the attempt conviction, which stems from Defendant's informing Victim that he wanted her to accompany him to the bedroom and have anal sex.

Attempt requires two essential elements: "An overt act in furtherance of but

12

failing to consummate the goal crime, coupled with the intent to commit the goal crime." *State v. Green,* 116 N.M. 273, 280, 861 P.2d 954, 961 (1993). The overt act must go beyond "mere preparation." *Id.* Moreover, attempt requires specific intent, and objective facts are required to corroborate the existence of that intent. *Id.* Intent may, however, be proven by reasonable inferences shown by the evidence. *Id.* Intent becomes a question of fact for the jury if reasonable inferences and sufficient circumstances exist. *Id.*

While we agree with the State that slight acts in furtherance of intent will constitute attempt, we do not agree that such an act occurred in this case. *See, e.g.*, *State v. Trejo*, 83 N.M. 511, 512, 494 P.2d 173, 174 (Ct. App. 1972) (noting that "slight acts in furtherance of that intent will constitute an attempt"). Once Victim refused to comply with his verbal command that she go into the bedroom for anal sex, he appears to have made no efforts toward effectuating that goal. Instead, he turned toward other criminal acts such as searching Victim's home for jewelry and other valuables. While we find Defendant's actions utterly reprehensible, we cannot agree with the State that Defendant engaged in any overt act to cause Victim to engage in anal intercourse. Rather, it appears that Defendant abandoned this demand in favor of other crimes once Victim refused the verbal command to accompany him.

Nor do we agree that Defendant's other ongoing crimes may be used as overt

acts or demonstrate Defendant's specific intent as to attempted anal penetration in this case. The State points to *State v. LeMarr* for the proposition that the ripping of a victim's shirt and the attempt to remove a victim's pants may support a conviction for attempted rape. 83 N.M. 18, 20-21, 487 P.2d 1088, 1090-91 (1971). In *LeMarr*, however, the specific actions of the defendant, the ripping of her shirt and the attempt to remove her pants, were clearly overt actions toward rape; these overt actions were distinct and not tied to other charges against the defendant for which he was convicted.

Factually, this case is quite different from *LeMarr*. Here, Defendant was tried and convicted for the same underlying actions that the State points to as supporting the conviction for attempted criminal sexual penetration. Defendant was tried and convicted for, among other charges, both the vaginal and oral penetrations, aggravated battery, and aggravated burglary. The State points to no separate, overt action that Defendant took toward causing Victim to engage in anal intercourse, other than verbally commanding that she accompany him to the bedroom, a demand which she refused. Under these facts, we cannot hold that sufficient evidence exists to support a conviction for attempted criminal sexual penetration. We therefore reverse and vacate Defendant's conviction as to Count 25.

**CONCLUSION**

14

For the foregoing reasons, we affirm the district court's admission of testimony regarding DNA evidence and the application of elderly enhancement statute to the Defendant's crimes against two elderly victims. We further reverse and vacate the verdict with regard to Count 25.

**IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**ROBERT E. ROBLES, Judge**