# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: June 7, 2017

**NO. 33,623**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**FRANK YAZZIE,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Benjamin Chavez, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jane A. Bernstein, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Sergio Viscoli, Appellate Defender
David Henderson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**GARCIA, Judge.**

{1}     On appeal, Defendant challenges the district court's imposition of a habitual offender enhancement to his sentence following a violation of his probation. Defendant raises two issues on appeal. First, Defendant argues that he was not subject to enhancement at the time of the probation violation because he had completed his sentence as to that particular conviction under his plea agreement. Second, Defendant argues that the district court erred in not applying the 2002 amendment to the habitual offender statute, NMSA 1978, § 31-18-17 (1993, amended 2002 and 2003), limiting the time period that the district court may consider prior felonies. We affirm the district court's ruling regarding Defendant's probation violation and its application of the habitual offender statute.

**BACKGROUND**

{2}     On April 2, 2002, Defendant Frank Yazzie, also known as Paul Throckmorton, entered into a repeat offender plea and disposition agreement (the plea agreement) by which he agreed to plead no contest to one count of third degree aggravated battery causing great bodily harm (Count 1), and one count of fourth degree aggravated assault with a deadly weapon (Count 2), for offenses occurring on or about September 19, 2001. Pursuant to the plea agreement, all other crimes for which he had been

charged were dismissed.

{3}      In pertinent part, the terms of the plea agreement provided that, as to sentencing, Defendant would receive a three-year sentence on Count 1 and a one-and-one-half-year sentence on Count 2. These sentences were to be served consecutively. Under the terms of the plea agreement, the State also filed a supplemental information charging Defendant as the same person convicted of the following felony offenses, to which Defendant admitted his identity: (1) aggravated assault on September 7, 1977, in Coconino County Superior Court, Arizona (two counts); (2) interstate transportation of a stolen motor vehicle and interstate transportation of stolen property (traveler's checks) on May 6, 1983, in the United States District Court for the District of New Mexico (four counts); (3) assaulting, resisting, or impeding a Department of Veteran Affairs law enforcement officer on June 19, 1992, in the United States District Court of New Mexico (one count). As a result of Defendant's admission regarding his prior felonies, the sentence on Count 2 received a habitual offender enhancement of eight years of mandatory incarceration. The plea agreement further stipulated that three years of Defendant's underlying sentence for Counts 1 and 2 would be suspended but was silent as to which specific count the suspended sentence related. This gave Defendant an initial incarceration exposure of at least eight years and up to nine and one-half years.

2

{4} Finally, the plea agreement stated that if the district court accepted the agreement, Defendant could also "be ordered to serve a period of probation." If Defendant later violated his probation, "he [could] be incarcerated for the balance of the sentence and have an [additional] eight . . . year habitual enhancement apply to Count 1; thus [as to] Count 1[, D]efendant could be incarcerated for up to eleven . . . years with two . . . years of parole if probation is violated."

{5} The district court accepted the plea agreement and sentenced Defendant consistent with its terms on June 28, 2002. The district court entered a judgment, partially suspended sentence, and commitment (the judgment and sentence), which stipulated that Defendant was to be imprisoned for the term of:

> three . . . years as to Count 1, one-and-one-half . . . years . . . as to Count 2, enhanced by eight . . . years pursuant to the habitual offender statute, all to run consecutive with each other for a total of twelve and one-half . . . years, of which three . . . years [were] suspended, for an actual sentence of imprisonment of nine and one-half . . . years.

The district court further imposed three years of probation and two years of parole following Defendant's release from incarceration. At the sentencing hearing, the district court explained that Defendant would serve probation concurrent with parole. Defendant also received pre-sentence confinement credit. Similar to the plea agreement, neither the district court's remarks at the sentencing hearing nor the judgment and sentence is clear as to which count the three-year suspension of

Defendant's sentence was intended to apply towards.

{6} Defendant was released from prison and began serving his three-year term of probation on March 19, 2011—running concurrently during the first two years with his term of parole. Defendant had served the bulk of his probation when the State alleged that Defendant violated the conditions of his probation and filed a motion to revoke his probation on December 16, 2013. Defendant and the State appeared before the district court for a probation revocation hearing on February 4, 2014. At the probation revocation hearing, the State filed a supplemental information in open court charging Defendant as a habitual offender on the basis of his prior felony convictions. Prior to the hearing, Defendant filed a motion to preclude the State's proposed enhancement of Defendant's sentence, arguing that Defendant had completed his sentence as to Count 1, the un-enhanced third degree aggravated battery offense, and had already served an eight-year enhancement on Count 2 and therefore, the State was precluded from seeking enhancement of the aggravated battery offense.

{7} Following the presentation of evidence, the district court found that the State had satisfied its burden of demonstrating that Defendant had violated his probation. The court then addressed Defendant's motion. Following argument by the parties, the district court ruled that Defendant had prior felony convictions that supported enhancement based upon the supplemental information filed by the State, as well as

4

the plea agreement and the judgment and sentence. The court denied Defendant's motion to preclude enhancement of his sentence and enhanced Defendant's aggravated battery conviction on Count 1 by eight years but suspended any remaining time on the underlying charge that was still being served. This appeal followed.

**DISCUSSION**

{8}     Defendant makes two arguments on appeal. First, Defendant argues that at the time he violated probation, he had completed his sentence, as well as any parole or probation time, as to Count 1 and was not subject to enhancement as a habitual offender as to Count 1. Second, Defendant argues that when the State filed its supplemental information in February 2014, it could not rely on prior convictions more than ten years old because the 2002 amendment to the habitual offender statute limited the time frame for prior felony convictions to ten years. *See* § 31-18-17(D)(1) (2002).

{9}     To the extent our analysis requires interpretation of the plea agreement, "[appellate courts] construe the terms of [a] plea agreement according to what [the d]efendant reasonably understood when he entered the plea." *State v. Fairbanks*, 2004-NMCA-005, ¶ 15, 134 N.M. 783, 82 P.3d 954 (internal quotation marks and citation omitted). "A plea agreement is a unique form of contract whose terms must be interpreted, understood, and approved by the district court." *State v. Gomez*, 2011-

5

NMCA-120, ¶ 9, 267 P.3d 831. If the language in the written agreement is ambiguous, it is the district court's task to resolve that ambiguity with the parties. *Id*. If the district court failed to resolve the ambiguity and no extrinsic evidence is introduced that would resolve it, then we "may rely on the rules of construction, construing any ambiguity in favor of the defendant. Under such circumstances, we review the terms of [a] plea agreement de novo." *Id.* (internal quotation marks and citation omitted). To the extent that our analysis requires interpretation of the judgment and sentence, we review de novo "the district court's interpretation and application of the sentencing law[.]" *State v. Brown*, 1999-NMSC-004, ¶ 8, 126 N.M. 642, 974 P.2d 136.

**I. Defendant Was Subject to an Additional Eight-Year Habitual Offender Enhancement at the Time He Violated Probation**

{10} New Mexico provides for increasing the basic sentence for those who have been determined to be habitual offenders. *See* § 31-18-17. "[T]he jurisdiction of a [district] court to enhance a felony sentence under the habitual offender statute expires once a defendant has completed service of that sentence." *State v. Lovato*, 2007-NMCA-049, ¶ 6, 141 N.M. 508, 157 P.3d 73. "This jurisdictional limitation is founded upon principles of double jeopardy: once a sentence has been served, a defendant's punishment for the crime has come to an end . . . and further punishment for that crime under any enhancement provision would violate the prohibition on

6

double jeopardy." *Id.* ¶ 6 (alteration, internal quotation marks, and citation omitted).

{11}  Such double jeopardy concerns are only implicated if the defendant has an objectively reasonable expectation of finality in the sentence. *See State v. Redhouse*, 2011-NMCA-118, ¶ 10, 269 P.3d 8 ("Increasing a defendant's sentence after a defendant begins serving the sentence implicates double jeopardy concerns if a defendant's objectively reasonable expectations of finality in the original sentencing proceedings are violated."). Defendant must establish that the district court did not have jurisdiction to impose the additional enhancement by proving two things: (1) that Defendant had an expectation of finality in his original sentence, and (2) that the expectation was reasonable. *See State v. Trujilllo*, 2007-NMSC-017, ¶ 11, 141 N.M. 451, 157 P.3d 16.

{12}  A defendant's service of a sentence may include the period of incarceration and any parole or probation that follows. *State v. Freed*, 1996-NMCA-044, ¶ 8, 121 N.M. 569, 915 P.2d 325. As such, a defendant does not have a reasonable expectation of finality in a sentence while serving probation or parole for the underlying conviction. *See State v. Villalobos*, 1998-NMSC-036, ¶ 12, 126 N.M. 255, 968 P.2d 766 ("We think the law and policy underlying the probation process prevent a reasonable expectation of finality in a probation sentence, even after the suspended sentence period.").

{13}    Defendant argues that because he had served his nine and one-half years of incarceration and two years of parole, he had a reasonable expectation of finality in the original judgment and sentence unless he violated his sentence as to Count 1, which he did not do because he had completed his probation on Count 1 at the time of the violation. Defendant's argument is based in part on his reading of NMSA 1978, Section 31-21-10(D) (1997) (imposing a two-year parole period for a third degree felony), and *State v. Utley*, 2008-NMCA-080, ¶ 10, 144 N.M. 275, 186 P.3d 904 (holding that when the district court did not direct the order in which consecutive sentences were to be served, this Court would construe the third degree felony sentence to be served last, prior to the imposed two-year parole period). Defendant argues that under Section 31-21-10(D) (1997) and *Utley*, a portion of Defendant's incarceration must have been served as to Count 1 as the district court imposed a two-year parole period, which can only be logically imposed as to Count 1, the third degree felony. He further argues that given the absence in the plea agreement and the judgment and sentence as to how much of Count 1 would be served in prison, "the most natural reading is . . . he would serve half his sentence on Count 1 in prison, and . . . all of the sentence on Count 2 would be suspended." We agree that under *Utley* and Section 31-21-10(D) (1997), Defendant was required to have served a period of incarceration on Count 1 in conjunction with his two years of parole following

8

release. However, if we were to adopt Defendant's interpretation of the judgment and sentence—that he served half of Count 1 in prison and the district court suspended all of Count 2—the result would be a fragmented probationary period, and such fragmentation was not provided for in either the plea agreement or the judgment and sentence.

{14}     Instead, with regard to probation, the plea agreement stated that if the district court accepted the agreement, "[Defendant] may also be ordered to serve a period of probation." Defendant further agreed that if he "later violate[d] that probation, he may be incarcerated for the balance of the sentence and have an eight . . . year habitual enhancement apply to Count 1[.]" Under the judgment and sentence, three years of Defendant's total sentence was suspended and "Defendant [was] ordered to be placed on supervised probation for three . . . years following release from custody[.]" It follows that Defendant would have expected to serve a three-year period of probation and be subject to additional enhancement of the sentence imposed for Count 1 during the entire period of his probation. *See Freed*, 1996-NMCA-044, ¶ 11 (rejecting the defendant's argument that he had an objectively reasonable expectation of finality where "[h]e signed a plea agreement that specifically and clearly informed him that if he violated the conditions of his probation, he would be subject to an additional enhancement and an additional three years of incarceration"). Because neither the

9

plea agreement nor the judgment and sentence structured Defendant's sentence such that the time served on probation corresponded with a particular conviction, Defendant had no reasonable expectation of finality as to Count 1 or any limitation on the enhancement of Count 1 prior to the completion of his entire three-year period of probation.

{15} Finally, we reject Defendant's argument that the rule of lenity should apply. "The rule of lenity applies when insurmountable ambiguity persists about the statute's scope after statutory interpretation or when we are unable to discern legislative intent." *State v. Contreras*, 2002-NMCA-031, ¶ 14, 131 N.M. 651, 41 P.3d 919 (internal quotation marks and citations omitted). However, Defendant does not argue that any statute in particular is ambiguous, and we will not guess as to Defendant's meaning. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that this Court will "not review unclear or undeveloped arguments [that] require us to guess at what [a] part[y's] arguments might be").

{16} For the foregoing reasons, we hold that the district court's interpretation and application of sentencing law was without error and that the district court retained jurisdiction to enhance Count 1 when Defendant violated his probation. *See Villalobos*, 1998-NMSC-036, ¶ 12 (recognizing that a defendant does not have a reasonable expectation of finality in a sentence while serving probation for the

underlying conviction); *State v. Sanchez*, 2001-NMCA-060, ¶ 23, 130 N.M. 602, 28 P.3d 1143 (stating that where the language of the plea agreement is clear and provides for additional enhancement of a defendant's sentence, the district court is without discretion in imposing that sentence).

**II.     The 2002 Amendment to the Habitual Offender Enhancement Statute Does Not Apply to Defendant**

{17}     Prior to 2002, the imposition of the habitual offender statute was mandatory in all cases in which there was a prior felony conviction, regardless of the date of the prior conviction. *See* § 31-18-17 (1993). In 2002, the Legislature amended the habitual offender statute (the 2002 amendment) to exclude prior felonies from consideration for habitual offender enhancement when the sentence and any period of probation or parole in the prior felony was completed ten or more years before the current conviction. Section 31-18-17(D) (2002). To determine whether the 2002 amendment is applicable to a case, we look to the date the amendment took effect, July 1, 2002. *See State v. Shay*, 2004-NMCA-077, ¶ 1, 136 N.M. 8, 94 P.3d 8. In *Shay*, this Court held that the amendment applies when the district court sentences a defendant for the underlying crime after July 1, 2002, if the supplemental information charging the habitual offender status is also filed on or after July 1, 2002. *Id*. ¶ 23. Although Defendant argues that *Shay* supports his position regarding whether the 2002 amendment should apply to the supplemental information filed on February 5,

2014, we are unpersuaded. Instead, *State v. Ortega* controls the present case. 2004-NMCA-080, 135 N.M. 737, 93 P.3d 758.

{18} In *Ortega*, the defendant was convicted and sentenced for the underlying crime prior to the effective date of July 1, 2002. *Id.* ¶¶ 3-5. Prior to July 1, 2002, the defendant negotiated a plea agreement to drop certain charges in exchange for a partially suspended sentence that included a period of probation. *Id.* ¶¶ 3-4. The defendant later violated the terms of his probation and was sentenced to a term that included the habitual offender enhancement that had been held in abeyance during the original sentencing. *Id.* ¶¶ 5, 7. This Court rejected the defendant's argument that the 2002 amendment should apply for two reasons. First, because a probation violation, standing alone, is not a crime that can trigger an independent sentence, any "additional enhancement at the time of the probation violation relates to the district court's [original] sentence for the underlying crimes before the 2002 amendment to the habitual offender statute took effect." *Id.* ¶ 8. Second, the defendant and the state reached a bargained-for agreement under which the defendant waived any existing or future objection, and the subsequent change to the existing statute would upset the parties' expectations. *Id.* ¶ 9. Like the defendant in *Ortega*, Defendant entered into the plea agreement, under which he waived his rights to objection and appeal, and was sentenced prior to July 1, 2002. Defendant then violated probation and, under

12

*Ortega*, is subject to enhancement under the habitual offender statute as it existed at the time of his original judgment and sentence. *See id.* ¶ 16 (specifying that the 2002 amendment did not apply to sentencing for a probation violation where the defendant's original sentence was imposed prior to the date of the 2002 amendment).

{19}    Finally, Defendant argues that *Ortega* conflicts with this Court's more recent opinion in *State v. Triggs*, 2012-NMCA-068, ¶ 9, 281 P.3d 1256. In *Triggs*, the defendant violated parole and pursuant to the terms of a plea agreement, the district court enhanced the defendant's sentence for seven offenses not previously enhanced and ordered them to be served consecutively. *Id.* ¶ 1. This Court held that the district court had the discretion to run habitual offender sentences concurrently. *Id.* ¶ 17. This Court reasoned that this discretion stems from the principle that the original judgment does not bind the judge who revokes parole, stating, "enhanced sentences are new sentences and . . . in imposing the new enhanced sentences, the [district] court's arrangement of the manner in which the new enhanced sentences were to be served was not limited by the arrangement for serving the regular sentences." *Id.* (alteration, internal quotation marks, and citation omitted). This Court further relied on the basic principle that district courts have the discretion, where there are multiple sentences, to impose sentences concurrently or consecutively. *Id.* ¶ 20.

{}    We see no conflict between *Ortega* and *Triggs*. *Triggs* reaffirms the discretion

13

of the district court in determining the manner in which a defendant will serve multiple sentences. 2012-NMCA-068, ¶ 20. Enhanced sentences may be new—in that they are newly imposed after the original sentence for a probation violation—but this does not strip a newly imposed sentence of its relationship to the original sentence, the grounds for which the sentence is being enhanced. *See Ortega*, 2004-NMCA-080, ¶ 8 (noting that "the additional enhancement at the time of the probation violation relates to the district court's [original] sentence for the underlying crimes"). We therefore see no conflict in the application of the principles established in *Ortega* and *Triggs*.

{20} In this case, Defendant's original 2002 sentence as to Count 1 held the specific eight-year habitual offender enhancement in abeyance, only to be imposed upon a subsequent violation of probation. The district court therefore had continuing jurisdiction to impose the enhancement under the habitual offender statute until Defendant had an objectively reasonable expectation of finality of his sentence as to Count 1, including his subsequent three-year term of probation. Per *Ortega*, the district court did not err in considering all of Defendant's prior felonies in enhancing Defendant's sentence as a habitual offender. 2004-NMCA-080, ¶ 8.

**CONCLUSION**

{21} For the foregoing reasons, we affirm the district court's enhancement of

Defendant's sentence after he violated his conditions of probation.

{22}   **IT IS SO ORDERED.**

_____
                              **TIMOTHY L. GARCIA, Judge**


**WE CONCUR:**


_____
**MICHAEL E. VIGIL, Judge**


_____
**J. MILES HANISEE, Judge**