The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number: _____**

**Filing Date: September 19, 2022**

**NO. S-1-SC-37389**

**STATE OF NEW MEXICO,**

Plaintiff-Respondent,

v.

**CHRISTINA M. BANGHART-PORTILLO,**

Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Daniel A. Bryant, District Judge**

Bennett J. Baur, Chief Public Defender
David Henderson, Appellate Defender
Kimberly M. Chavez Cook, Appellate Defender
Santa Fe, NM

for Defendant-Petitioner

Hector H. Balderas, Attorney General
Emily C. Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Plaintiff-Respondent

**OPINION**

**BACON, Chief Justice.**

{1}     Defendant Christina Banghart-Portillo pleaded guilty to tampering with evidence, contrary to NMSA 1978, Section 30-22-5 (2003), and conspiracy to commit tampering with evidence, contrary to NMSA 1978, Section 30-28-2 (1979) (Count 1 and Count 2, respectively), each of which was a fourth-degree felony offense, under a written plea agreement. Because Defendant had a prior felony conviction, each sentence was enhanced at her initial sentencing by one year under New Mexico's habitual offender statute, NMSA 1978, Section 31-18-17(A) (2003). Defendant also admitted her identity in a second prior felony at the time of her sentencing, yet the district court imposed no additional enhancement at that time. The district court imposed consecutive sentences on Defendant for a total of five years of incarceration with three years suspended, leaving her with an initial sentence of two years of incarceration followed by three years of probation. Defendant violated the terms of her probation over halfway through her three-year probationary period, prompting the district court to apply a second habitual offender enhancement, which added a total of three years to the sentence for each count pursuant to Section 31-18-17(B).

{2}     The central issue before this Court is whether Defendant had a reasonable

expectation of finality for Count 1 such that the district court no longer had jurisdiction when it applied the habitual offender enhancement to that Count. Defendant argues on appeal that the district court's enhancement of the Count 1 sentence resulted in a double jeopardy violation because the court had lost jurisdiction by the time of the enhancement. The Court of Appeals held that the district court retained jurisdiction to apply a habitual offender enhancement to Count 1. *State v. Banghart-Portillo*, A-1-CA-36917, mem. op. ¶ 3 (N.M. Ct. App. Oct. 24, 2018) (nonprecedential). We originally granted, then quashed, Defendant's petition for writ of certiorari. We later granted Defendant's motion for rehearing on two narrow issues:

> (1)     Should this Court adopt *State v. Yazzie*, 2018-NMCA-001, 410 P.3d 220? If so, does *Yazzie* answer the question of whether Defendant had an objectively reasonable expectation of finality in her sentence, especially given the type of plea agreement?

> (2)     How does the holding of *State v. Mares*, 1994-NMSC-123, 119 N.M. 48, 888 P.2d 930, inform the inquiry whether Defendant had an objectively reasonable expectation of finality in her sentence?

{3}     We agree that the district court retained jurisdiction to enhance Defendant's sentence for Count 1, but we reach that conclusion guided by the issues on which we granted rehearing. We further clarify that a defendant must be reasonably informed when a sentence of probation is imposed on multiple counts in the

2

aggregate such that a habitual offender enhancement will apply to all counts throughout the entire probationary period.

## I. BACKGROUND

### A. Factual Background

{4} According to the charging documents in Defendant's case, Officer Steven Minner pulled over Defendant and Anthony Banghart because their vehicle had a broken taillight. Officer Minner arrested Defendant, and a fellow officer arrested Mr. Banghart because both had outstanding warrants. After the two were booked, another officer observed Mr. Banghart remove an object from his clothing near his abdomen area and pass it to Defendant. Defendant then attempted to swallow the object but was unable to and "coughed it up." Defendant gave the object back to Mr. Banghart, and he put it back in his clothing. The observing officer relayed this information to Officer Minner. The two officers then searched Mr. Banghart and discovered two pieces of plastic that contained heroin.

#### 1. Defendant's plea and sentencing

{5} Defendant pleaded guilty to one count of tampering with evidence, contrary to Section 30-22-5, and one count of conspiracy to commit tampering with evidence, contrary to Section 30-28-2. The plea agreement provided that "[t]he State may bring habitual offender proceedings, as provided by law, based on any convictions not

admitted in this plea. The State may also choose to withdraw this plea agreement if it discovers any such convictions." At the plea hearing, the State informed the district court that it had reason to believe Defendant may have prior convictions under a different name and needed time to investigate. The district court then instructed Defendant that if she had

> two prior felony convictions, then [the court] could add four years to each of [her underlying offenses], and if that is the case, none of that time is able to be deferred by [the court] or suspended, you understand? So [Defendant] would have to serve a minimum of four years [per offense] in the state penitentiary.

Defendant indicated that she understood.

{6}     Approximately one month later, the State filed a supplemental criminal information, alleging that Defendant had committed two prior felonies. At the sentencing hearing, defense counsel informed the court that Defendant would admit her identity in both prior felonies. Defense counsel further explained that the State had agreed to seek enhancement for only one prior felony and to hold the other in abeyance. The district court reminded Defendant that she did not need to admit to the two prior felony convictions and that the State had the burden of proving its allegations in the supplemental information. Defendant and the district court then had the following exchange:

> Judge: If you make that admission [to the two prior felony offenses] today, you are making it very easy for the court in the future to give you

4

four additional years and that would be per count, so that could be eight years, because I'm running these consecutive to each other. You understand that it could be an eight-year sentence for you if you violate probation.

Defendant: Yes Ma'am.

{7}     The district court sentenced Defendant to eighteen months in prison for Count 1 and eighteen months in prison for Count 2 and added a one-year habitual offender enhancement to each, for a total of five years of incarceration. The district court suspended three years of Defendant's incarceration relating to Counts 1 and 2 and instead imposed three years of probation to begin after her release from her two-year prison sentence relating to her habitual offender enhancements.[1] Finally, the district court provided that Defendant would serve a mandatory parole term of one year following her incarceration to run concurrent with her term of probation.

**2.      Defendant's release from prison and probation violations**

{8}     Defendant began her probationary period after being released from prison. Defendant violated probation multiple times, prompting the State to file a petition to revoke Defendant's probation on three occasions. The district court revoked then reinstated Defendant's probation on the first two occasions. The district court then

---

[1]Section 31-18-17(A) provides that a sentence under the habitual offender statute "shall not be suspended or deferred" absent circumstances not present in the instant matter.

revoked Defendant's probation following the State's third petition, just over halfway into Defendant's probation term, and enhanced her sentences for Counts 1 and 2 by three years each, pursuant to Section 31-18-17(B).

**B.      Procedural Background**

{9}      Defendant filed pleadings opposing the district court's habitual offender enhancements for both counts. Defendant argued, among other things, that the written plea agreement imposed a maximum term of three years of incarceration and that she completed her sentence as to Count 1 after serving over half of her three-year probationary period, such that the district court lost jurisdiction to enhance it. This argument was based on Defendant's assertion that the first eighteen months of her probation corresponded to Count 1, and the second eighteen months of her probation corresponded to Count 2. The district court rejected Defendant's arguments, finding that her three-year probationary period was unitary and, as a result, that she was still on probation for and subject to enhancement on both Count 1 and Count 2 throughout the entire three-year term.

{10}      Defendant appealed to our Court of Appeals, which held that the district court retained jurisdiction to enhance Defendant's sentence on both counts. *Banghart-Portillo*, A-1-CA-36917, mem. op. ¶¶ 1, 3. It reasoned that "it did not appear that Defendant's judgment and sentence was structured for time served on probation to

6

correspond with any particular conviction." *Id.* ¶ 3. As such, Defendant "had no reasonable expectation of finality as to [C]ount [1] or any limitation on the enhancement prior to the completion of her entire probationary period." *Id.* (citing *Yazzie*, 2018-NMCA-001, ¶ 14). Defendant then timely petitioned this Court for a writ of certiorari under Rule 12-502 NMRA. We granted, then quashed certiorari. We subsequently granted Defendant's motion for rehearing to determine whether *Yazzie* is controlling in this matter and to consider the impact *Mares* has on our analysis.

## II. DISCUSSION

{11} "[W]hether a trial court has jurisdiction in a particular case is a question of law that we review de novo." *Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 10, 142 N.M. 786, 171 P.3d 300. "We generally apply a de novo standard of review to the constitutional question of whether there has been a double jeopardy violation." *State v. Cummings*, 2018-NMCA-055, ¶ 6, 425 P.3d 745. Additionally, to the extent that this Court is required to interpret a plea agreement, the terms of the plea agreement are also reviewed de novo. *State v. Gomez*, 2011-NMCA-120, ¶ 9, 267 P.3d 831.

{12} "In New Mexico, the jurisdiction of a trial court to enhance a felony sentence under the habitual offender statute expires once a defendant has completed service of that sentence." *State v. Lovato*, 2007-NMCA-049, ¶ 6, 141 N.M. 508, 157 P.3d

7

73. "This jurisdictional limitation is founded upon principles of double jeopardy: once a sentence has been served, a defendant's punishment for the crime has come to an end." *Id.* (internal quotation marks and citation omitted). "Such double jeopardy concerns are only implicated if the defendant has an objectively reasonable expectation of finality in the sentence." *Yazzie*, 2018-NMCA-001, ¶ 11. "[A d]efendant must establish that the district court did not have jurisdiction to impose the additional enhancement by proving two things: (1) that [the d]efendant had an expectation of finality in [the defendant's] original sentence, and (2) that the expectation was reasonable." *Id.*

{13} We use the two questions on which we granted rehearing to guide our analysis. First, we determine whether *Yazzie* is controlling in this matter. Second, we determine what the holding in *Mares* adds to our analysis.

**A.** ***Yazzie* Does Not Answer Whether Defendant Had an Objectively Reasonable Expectation of Finality for Count 1**

{14} To determine whether Defendant had a reasonable expectation of finality in her sentence relating to Count 1, we analyze the written terms of the plea agreement and the circumstances surrounding the plea agreement. "A plea agreement is a unique form of contract whose terms must be interpreted, understood, and approved by the district court." *Yazzie*, 2018-NMCA-001, ¶ 9 (internal quotation marks and citation omitted). When interpreting a plea agreement, appellate courts construe the

8

agreement's terms according to "what [the d]efendant reasonably understood when [the defendant] entered the plea." *Id.* (first alteration in original) (internal quotation marks and citation omitted). "If the language in the written agreement is ambiguous, it is the district court's task to resolve that ambiguity with the parties." *Id.* In this case, the Court of Appeals relied on *Yazzie* to hold that Defendant had no reasonable expectation of finality in her sentence. *Banghart-Portillo*, A-1-CA-36917, mem. op. ¶ 3. The State similarly argues that *Yazzie* is analogous to this case and that we should affirm the Court of Appeals' analysis. For the reasons that follow, we disagree that *Yazzie* is dispositive in this case.

{15}     In *Yazzie*, the terms of the written plea agreement provided that the defendant "would receive a three-year sentence on Count 1 and a one-and-one-half-year sentence on Count 2." *Yazzie*, 2018-NMCA-001, ¶ 3. Under the terms of the plea agreement, the State filed a supplemental information charging the defendant as the same person convicted of three other felony offenses. *Id.* The defendant admitted his identity in the three additional charges and received a habitual offender enhancement of eight additional years on Count 2. *Id.* Similar to this case, three years of the defendant's sentence in *Yazzie* were suspended, and the district court ordered his placement on supervised probation for three years following his incarceration. *Id.* ¶¶ 13-14. The defendant also agreed that if he "later violate[d] that probation, he may

9

be incarcerated for the balance of the sentence and have an eight[-]year habitual enhancement apply to *Count 1*." *Id.* ¶ 14 (first alteration in original) (emphasis added) (internal quotation marks omitted).

{16} The district court in *Yazzie* later concluded that the defendant had violated his probation, and the court imposed a habitual offender enhancement on Count 1. *Id.* ¶ 7. The defendant argued on appeal that he had completed his sentence for Count 1 at the time the district court enhanced his sentence. *Id.* ¶ 8. The Court of Appeals held that, under the express terms of the plea agreement, "[the d]efendant would have expected to serve a three-year period of probation and be subject to additional enhancement of the sentence imposed for Count 1 during the entire period of his probation." *Id.* ¶ 14. Accordingly,

> [b]ecause neither the plea agreement nor the judgment and sentence structured [the d]efendant's sentence such that the time served on probation corresponded with a particular conviction, [the d]efendant had no reasonable expectation of finality as to Count 1 or any limitation on the enhancement of Count 1 prior to the completion of his entire three-year period of probation.

*Id.*

{17} The Court of Appeals here relied on *Yazzie* in large part for its conclusion that Defendant's "probation term was not assigned to run in accordance with either of the counts, but rather in total time." *Banghart-Portillo*, A-1-CA-36917, mem. op. ¶ 3. Thus, Defendant "was . . . still subject to the district court's jurisdiction for

10

enhancement of both counts." *Id.* Defendant argues that the factual distinctions in *Yazzie* render it inapplicable to this case. While we acknowledge that the facts of *Yazzie* are distinct from this case, we agree with *Yazzie*'s holding that a unitary probationary term encompassing more than one count is permissible, so long as the defendant is reasonably informed of what to expect under the terms of the plea agreement and sentence. *Yazzie*, 2018-NMCA-001, ¶ 14. However, for the reasons that follow, we look beyond *Yazzie* to decide whether the district court in this case retained jurisdiction to enhance Defendant's sentence for Count 1.

{18} First, the express terms of the plea agreement in *Yazzie* were clear that the defendant would receive a habitual offender enhancement of up to eight years on Count 1 if he violated probation. *Yazzie*, 2018-NMCA-001, ¶ 4. Here, no such language existed in Defendant's written plea agreement. In fact, Defendant's written plea agreement only specifies that she faced zero to three years of incarceration. Second, the plea agreement in *Yazzie* further specified that an enhancement of eight years already attached to Count 2 at the time of the defendant's sentencing. *Id.* ¶ 3. As such, when the defendant in *Yazzie* violated the terms of his probation, the only count that the district court had not yet enhanced was Count 1. In this case, Defendant's written plea agreement was silent about the possibility of enhancement of either count if she violated probation. Based on these distinctions, it follows that

the defendant in *Yazzie* could have reasonably expected to receive an eight-year enhancement on Count 1 according to the express terms of his plea agreement and the structure of his sentence. Here, in contrast, the express terms of the plea agreement and structure of the sentence did not create such a clear and reasonable expectation for Defendant. Thus, Defendant's written plea agreement was ambiguous in the sense that it did not specify the consequences she faced if she violated probation following her admission of the two prior felonies.

{19}    Accordingly, we must look beyond Defendant's written plea agreement and determine whether the district court resolved the ambiguities about the consequences of a probation violation. *See Yazzie*, 2018-NMCA-001, ¶ 9.

**B.    Any Ambiguities in the Plea Agreement Were Cured Pursuant to *Mares***

{20}    Following our determination that Defendant's written plea agreement was ambiguous, we now must analyze whether the district court resolved the ambiguity and thus reasonably informed Defendant of what she could expect if she violated probation. *Id.* This Court held in *Mares* that "[i]f the [district] court resolves alleged ambiguities [in the plea agreement] and no further objection is made, the agreement is no longer ambiguous on those points addressed by the court." 1994-NMSC-123, ¶ 12. In *Mares*, the defendant "entered into a plea agreement under which he . . . plead[ed] nolo contendere to one count of trafficking cocaine." *Id.* ¶ 2. The plea

agreement provided that the defendant would be sentenced to nine years of imprisonment. *Id.* ¶ 3. The district court suspended all but seventy days of the defendant's sentence and imposed forty-eight months of probation. *Id.* During the sentencing hearing, defense counsel inquired about the period of incarceration the defendant faced if he violated probation. *Id.* ¶ 4. The district court responded that the defendant faced a potential of nine years of incarceration if he violated probation. *Id.* Consequently, this Court held that "the [district] court resolved any ambiguity regarding the period of incarceration facing [the defendant] in the event he violated the conditions of his probation." *Id.* ¶ 13.

{21} *Mares*, unaddressed by the dissent, informs the outcome of this case. The district court here resolved any ambiguities present in the plea agreement by informing Defendant of the potential consequences if she violated probation. The dissent maintains that "defendants have the right to be clearly informed by the words of a plea agreement and by the district court regarding the consequences of these types of pleas, particularly when they stipulate to prior felonies." *Dissent*, ¶ 37. However, *Mares* instructs that when a plea agreement is ambiguous, the district court may clarify the terms of the agreement and cure the ambiguities. *Mares*, 1994-NMSC-123, ¶ 12. That is what occurred in this case. The district court specifically informed Defendant that if she admitted to both prior felonies, a probation violation

13

would result in a four-year habitual offender enhancement on each of her counts, totaling eight additional years of incarceration. This clarification occurred on more than one occasion. First, the district court informed Defendant of the consequences of having two prior felonies at her plea hearing, before the State filed the supplemental information. Second, the district court ensured that Defendant understood the consequences of admitting to the two prior felonies at her sentencing hearing after the State filed the supplemental information. Defendant had the opportunity to object or withdraw the plea at this time, but she did not.

{22}	Thus, like in *Mares*, the district court here cured any ambiguities present in the plea agreement about the potential consequences of a probation violation. Based on that clarification, Defendant should have reasonably expected that she faced an additional eight years of incarceration if she violated probation and that each Count was subject to a habitual offender enhancement throughout her entire probationary period. As a result, Defendant has failed to prove that she had a reasonable expectation of finality as to Count 1. *See Yazzie*, 2018-NMCA-001, ¶¶ 10-11 (holding that a defendant must prove that his or her expectation of finality was reasonable in order to establish that the district court did not have jurisdiction to impose an additional enhancement).

## C. Defendant's Remaining Arguments Do Not Alter Our Analysis

{23} Defendant and the dissent rely on *Lovato*, 2007-NMCA-049, to argue that because Defendant had served over half of her probation, the district court lost jurisdiction to enhance Count 1. *Lovato* is inapplicable here. In *Lovato*, similar to this case, the defendant was convicted of multiple felony counts. *Id.* ¶ 2. The defendant argued that because he already served his incarceration period and parole for the first count, the district court lost jurisdiction to enhance that sentence. *Id.* ¶ 4. However, crucially, the defendant in *Lovato* had not been adjudicated as a habitual offender prior to the completion of his sentence for the first count. *Id.* ¶ 3. Accordingly, the Court of Appeals held that the defendant could not have reasonably expected that count to be enhanced. *Id.* ¶ 10; *see also State v. Gaddy*, 1990-NMCA-055, ¶ 8, 110 N.M. 120, 792 P.2d 1163 ("An unenhanced sentence remains a valid sentence until it is *determined* that [a] defendant is a habitual offender and that the underlying sentence is subject to enhancement."). Here, when Defendant entered her plea, she admitted her identity for two prior felonies and acknowledged that her sentence could be enhanced up to eight additional years if she violated probation. *Lovato* therefore is inapposite.

{24} Defendant further contends that structuring her probation as one unitary block for both Counts is impermissible under *Brock v. Sullivan*, 1987-NMSC-013, 105

15

N.M. 412, 733 P.2d 860. In *Brock*, we examined an instance where the defendant was convicted of four fourth-degree felony offenses and was sentenced to eighteen months of incarceration for each offense. *Id.* ¶ 1. Each of the defendant's sentences also included a term of parole. *Id.* ¶ 3. An unusual issue arose in *Brock* when the Parole Board "separated each parole period from the underlying sentence and period of imprisonment imposed thereon and, in effect, tolled commencement of the parole periods until the sentence on the last consecutive offense was served." *Id.* ¶ 4. We held that this instance of "stacking of multiple parole periods" is impermissible under New Mexico law. *Id.* ¶ 6 (footnote, internal quotation marks, and citation omitted). Accordingly, we held that the defendant must serve each of his parole sentences immediately after completing the period of incarceration for the corresponding sentence and concurrently with any consecutive sentence of incarceration. *Id.* ¶ 13.

{25} Defendant's arguments under *Brock* must fail. Nothing in *Brock* suggests that its holding or principles apply in parallel to both parole and probation. In fact, our analysis in *Brock* centered explicitly around statutes relating to parole only. *See generally Brock*, 1987-NMSC-013. Defendant makes no argument as to why our holding prohibiting fragmenting of parole periods similarly applies to probation. Moreover, a unitary block of probation would not result in the type of "stacking"

prohibited by *Brock*. *See id.* ¶¶ 6-7. *Brock* recognized an exception where parole may be served in prison to prevent fragmenting. *Id.* ¶ 13. Probation, by its nature, cannot be served in prison.[2] As a result, a term of probation is necessarily separate from the corresponding sentence of incarceration when, as in this case, a defendant is sentenced to periods of incarceration and probation on multiple counts. Therefore, *Brock* does not change our rejection of Defendant's challenge to probation imposed as a unitary block in this case.

**D.  Plea Agreements Should Specify When a Probationary Period Is to Be Served in the Aggregate**

{26}  While holding that the district court cured any apparent ambiguities in Defendant's plea agreement pursuant to *Mares*, we also emphasize the importance of clarity in plea agreements. We note that the result in this case may very well have been different if the district court had not made it clear that Defendant faced up to eight additional years of incarceration if she violated probation. We caution the sentencing court and counsel for the parties to ensure that it is clear to a defendant accepting a plea whether probation is to be served in a unitary block. This will

---

[2]NMSA 1978, Section 31-21-5(B) (1978), the definitions section of the Probation and Parole Act, defines probation as "the procedure under which an adult defendant, found guilty of a crime upon verdict or plea, is *released by the court without imprisonment* under a suspended or deferred sentence and subject to conditions." (Emphasis added.)

17

provide the defendant notice that a habitual offender enhancement may apply to all counts for the duration of the probationary period if a violation occurs. We further clarify that there can be no presumption that a probationary term will be served in the aggregate absent explicit language in the plea agreement or clarification by the district court. Failing to make this specification would create an ambiguity in the plea and undermine a defendant's reasonable expectation of finality.

## III. CONCLUSION

{27} We conclude that Defendant did not have a reasonable expectation of finality in Count 1 at the time that the district court enhanced Defendant's sentence because the district court had previously informed her of the consequences she faced if she violated probation. Therefore, we affirm the Court of Appeals and hold that the district court properly retained jurisdiction to apply a habitual offender enhancement to Count 1.

{28} **IT IS SO ORDERED.**

_____

**C. SHANNON BACON, Chief Justice**

**WE CONCUR:**

_____

**JULIE J. VARGAS, Justice**

18

_____

**CINDY LEOS, Judge, sitting by designation**


**DAVID K. THOMSON, Justice, dissenting**


**BRIANA H. ZAMORA, Justice, concurring in dissent**

**THOMSON, Justice (dissenting).**

{29} The majority, *maj. op.* ¶ 12, rightly acknowledges that "[i]n New Mexico, the jurisdiction of a trial court to enhance a felony sentence under the habitual offender statute expires once a defendant has completed service of that sentence." *Lovato*, 2007-NMCA-049, ¶ 6 (citing *Gaddy*, 1990-NMCA-055, ¶ 8) ("[T]he trial court was deprived of jurisdiction to impose a habitual offender enhancement after the defendant had completely served the underlying sentence."); *March v. State*, 1989-NMSC-065, ¶¶ 5, 7, 13, 109 N.M. 110, 782 P.2d 82 (holding that the trial court had no jurisdiction to enhance the defendant's sentence because the earning of meritorious deductions had brought the defendant's service of his sentence to an end). After quashing its writ of certiorari in this case, this Court granted Defendant's motion to reconsider the appeal, accepting Defendant's request to "rehear its quash order as to Count 1 only." I appreciate the Court's willingness to rehear its order to quash, but I disagree with the majority's conclusions. I am not convinced that it is lawful to extend a district court's jurisdiction by applying the aggregate three-year term of probation to each count in this case when the sentence provides that each count shall run consecutively and that each count be enhanced separately. Put simply, whereas here there is no part of the sentence for count one to be served, there is no part of a defendant's sentence to be enhanced. "Once a defendant has

20

completely served his or her underlying sentence, the district court loses jurisdiction to enhance that sentence, even if the state filed the supplemental information before the defendant finished serving the underlying sentence." *State v. Godkin*, 2015-NMCA-114, ¶ 20, 362 P.3d 161, 167 (text only) (quoting *State v. Roybal*, 1995-NMCA-097, ¶ 4, 120 N.M. 507, 903 P.2d 249).[3] Here it is indisputable that Defendant completely served her underlying sentence with regard to Count 1 before the district court's exercise of jurisdiction to enhance that sentence.

{30}    I appreciate the considered guidance the majority provides regarding how a defendant could be better informed about the structure, term, and finality of a sentence when faced with the facts of this case. *See maj. op.* ¶ 26. I also agree with the majority's conclusion that reliance on *Yazzie*, 2018-NMCA-001, ¶ 9, to quash certiorari in this case was misguided. *Maj op.* ¶ 14. Respectfully, however, I believe that the majority's opinion does little to resolve the issue in this case, which is the propriety of an enhancement of the underlying sentence on a count where that sentence is completed. Despite the needed guidance it provides, the majority opinion's ultimate holding essentially reaffirms the original decision to quash

---

[3]The "text only" parenthetical used herein indicates the omission of any of the following—internal quotation marks, ellipses, and brackets—that are present in the text of the quoted source, leaving the quoted text itself otherwise unchanged.

certiorari. Because I conclude, guided by *Lovato*, that the trial court has no authority to enhance Defendant's sentence for Count 1 as that sentence has been completely served, I respectfully dissent.[4]

**{31}** Defendant like all defendants "should be able to negotiate the terms of a plea agreement to the full extent allowed by law[, including] . . . a maximum potential incarceration provision in exchange for a guilty plea . . . that governs both sentencing and post-sentencing procedures." *Mares*, 1994-NMSC-123, ¶ 11. The instant felony charges Defendant was resolving at the plea hearing were tampering with evidence and conspiracy to tamper with evidence. At Defendant's sentencing hearing, the State presented two prior felony convictions, one for forgery and one for worthless checks. The State agreed to pursue only one of the prior felonies and hold the others in abeyance. This resulted in a one-year enhancement on the instant felony charge.

**{32}** Concerning the State's ability to seek sentencing enhancements based on prior convictions, the written plea agreement in this case simply provided, "The State may bring habitual offender proceedings, as provided by law, based on any convictions

---

[4]The majority focuses most of its analysis on ambiguity created in the plea agreement and maintains that, because the district court resolved those ambiguities post plea, Defendant's argument fails. Because Defendant asks us to review only the enhancement of the Count 1 sentence, and because I would decide that the District Court lacks jurisdiction to enhance Count 1, I do not address the plea-agreement-ambiguity portion of the majority opinion. *See maj. op.* ¶ 20.

not admitted in this plea." At the plea hearing, the State advised the district court that it needed an opportunity to investigate possible prior convictions to determine whether it would bring habitual offender proceedings. The district court then informed Defendant that, under the agreement, if she had one prior felony conviction her sentence could be enhanced by one year for Count 1 and one year for Count 2, and Defendant indicated that she understood.

{33} Defendant's written plea agreement acknowledged that "[s]entencing remains in the discretion of the court" and that "Defendant may be ordered to serve a term of incarceration of between zero (0) and three (3) years" based on running the "maximum basic sentence of eighteen (18) months" for tampering with evidence (Count 1) and the "maximum basic sentence of eighteen (18) month for conspiracy" (Count 2) *consecutively*. Defendant received the maximum sentence for the two instant felonies. The Judgement, Sentence, and Order Partially Suspending Sentence imposed an eighteen (18) month sentence on Count 1 and an eighteen (18) month sentence on Count 2, noting that the sentence for Count 2 was to run *consecutively*, after Count 1. *Consecutive sentences* is defined as "two or more sentences of jail time to be served in sequence." Black's Law Dictionary (11th ed. 2019) at 1636. The sentence for each count was enhanced by one year, based on a finding that Defendant was a habitual offender, and on her admission to one previous offense, with an oral

acknowledgement that a second admission was held in abeyance. Running the sentences consecutively—and attaching a one-year enhancement to the basic sentence of each—the district court reached a five-year total sentence. The district court also suspended three years of the five-year sentence, leaving two years as the actual term of imprisonment. Thus the actual sequence of the sentence is as follows: Defendant is sentenced for two-and-one-half years on Count 1 (18 months for the crime and one year for being a habitual offender), Defendant serves that sentence for Count 1, and then Defendant starts to serve the same amount of time for Count 2. This applies the credit for time served to Count 1 first as that is its sequence in Defendant's sentence. As discussed below, regardless of how the majority wants to interpret the probationary terms or whether the plea was amended after the fact, under a consecutive sentence the sentence for Count 1 must be served before the sentence for Count 2 can begin. In this case the sentence for Count 1 was served, and when that happened the trial court lost jurisdiction to enhance the sentence for Count 1.

{34}     This conclusion is not only what a plain reading of "consecutive" requires but is also what the statute governing the use of prior felonies requires. Each "prior felony conviction" must apply to the "basic sentence" of the "instant felony." Section 31-18-17(A) (providing that the basic sentence for the instant felony "shall

24

be increased by one year" for "one prior felony conviction"); § 31-18-17(B) (providing that the basic sentence for the instant felony "shall be increased by four years" for "two prior felony convictions"); § 31-18-17(C) (providing that the basic sentence for the instant felony "shall be increased by eight years" for "three or more prior felony convictions"). State law also requires that Defendant receive credit on her suspended sentence for time served on probation. NMSA 1978, § 31-21-15(A)-(B) (2016) (stating that if imposition of sentence was deferred and a probationer has violated any condition of release, "the court may impose any sentence that might originally have been imposed, but credit shall be given for time served on probation").

{35} In February 2016 Defendant was released from a two-year term of incarceration and began probation. Following Defendant's arrest in October 2017 for a probation violation, the district court revoked probation and enhanced the sentence for Count 1 by three years. Between the time when her probationary period began and when it was revoked Defendant had completed 612 days of probation. Combined with presentence credit of 164 days—for a total of 2.1 years—and with one year of the period of incarceration applicable to Count 1, Defendant's total sentence served was well over the two-and-one-half years she was obligated to serve on Count 1. Thus, based on its own explanation, the district court could not

effectively sentence Defendant to serve any period of incarceration on Count 1 as of when she had successfully served 1.5 years on probation.

{36} "Whenever the period of suspension expires without revocation of the order, the defendant is relieved of any obligations imposed on him by the order of the court and has satisfied his criminal liability for the crime." NMSA 1978, § 31-20-8 (1977). If the district court could not revoke Defendant's probation and incarcerate Defendant for any portion of the suspended sentence on Count 1, the district court lacked jurisdiction to enhance Defendant's sentence on Count 1. *See Lovato*, 2007-NMCA-049, ¶ 6 ("In New Mexico, the jurisdiction of a trial court to enhance a felony sentence under the habitual offender statute expires once a defendant has completed service of that sentence."). The district court's minimal explanation to Defendant at a subsequent sentencing hearing—that admitting a second prior at that time would make it "very easy for a court in the future to give [Defendant] four additional years, and that would be per count and could be for eight years"—cannot persuade this Court to determine that Defendant agreed to amend her initial plea agreement by an illegal extension of the sentence in Count 1 beyond two and one half years.

{37} Finally, the holding of the majority along with, in my view, the misguided holding of *Yazzie* should serve a note of caution for defendants who agree to consolidate charges into one plea agreement, especially when it is likely they will be

26

sentenced consecutively. In my view, defendants have the right to be clearly informed by the words of a plea agreement and by the district court regarding the consequences of these types of pleas, particularly when they stipulate to prior felonies.

{38} Therefore, I would reverse the Court of Appeals in part and hold that allowing the district court to enhance Defendant's sentence on Count 1 violates concepts of double jeopardy. At the time Defendant entered into the plea agreement, she had an *objectively reasonable expectation of finality* in her sentence as to Count 1, and she had served in excess of her basic sentence and enhancement before her arrest for probation violation. The district court lacked jurisdiction to impose further periods of incarceration on Count 1 at that point. *See March*, 1989-NMSC-065, ¶ 5 ("A defendant's objectively reasonable expectation of finality in sentencing for double jeopardy purposes turns upon NMSA 1978, Section 31-18-19 ([1977]), which declares it is the duty of the district attorney to bring the habitual offender charge 'at any time, either after sentence or conviction,' [but ] the statute does not say 'after *serving* of sentence.'"); *see also* § 31-20-8 (relieving a defendant "of any obligations imposed on him by the order of the court" when the defendant "has satisfied his criminal liability for the crime" and "the period of suspension expires without revocation of the order" of suspension).

_____
**DAVID K. THOMSON, Justice**

**I CONCUR:**

_____
**BRIANA H. ZAMORA, Justice**