This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-39134

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MODA JAMES BENTLEY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**T. Glenn Ellington, District Judge**

Raúl Torrez, Attorney General
Emily Tyson-Jorgenson, Assistant Attorney General
Teresa Ryan, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mark A. Peralta-Silva, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** This case is again before us following our Supreme Court's order (the remand order) in which it vacated our original opinion and remanded the case to this Court in light of the publication of its opinion in *State v. Banghart-Portillo*, 2022-NMSC-021, 519 P.3d 58. Defendant Moda James Bentley's original sentence of incarceration was suspended on the condition that he serve two eighteen-month probation terms, to be served consecutively. After violating the terms of his probation, the district court filed an

amended judgment and sentence in which it revoked Defendant's probation, imposed the balance of the thirty-six total months of probation to be served via incarceration, and enhanced each sentence by four years due to two prior felony convictions that subjected Defendant to habitual offender status. Defendant appealed the amended judgment and sentence, raising the following arguments that we address anew here in accordance with the remand order: (1) the district court erred in enhancing Defendant's sentence following the revocation of his probation; and (2) the district court violated Defendant's due process rights by holding the evidentiary hearing related to his probation revocation via audio-visual connection, rather than in-person, pursuant to Supreme Court Order, No. 20-8500-013 (April 16, 2020) (the Supreme Court Order).[1] Based on our renewed analysis of Defendant's first argument under *Banghart-Portillo*, as directed by the remand order, we now reverse and remand.

## DISCUSSION

### I.      The District Court's Enhancement of Defendant's Sentence

**{2}**      In July 2017, Defendant pleaded guilty to felonies in two different district court cases: (1) district court cause number D-0101-CR-2016-00451 (Case 451), receiving or transferring a stolen vehicle or motor vehicle, contrary to NMSA 1978, Section 30-16D-4 (2009); and (2) district court cause number D-0101-CR-2016-00473 (Case 473), possession of a firearm or destructive device by a felon, contrary to NMSA 1978, Section 30-7-16 (2001, amended 2020). Defendant was sentenced to two eighteen-month terms of incarceration, which the district court suspended on the condition that Defendant successfully complete a total of three years of probation, comprised of two eighteen-month sentences to be served consecutively. In his plea agreement, as well as in the district court's original judgment and order fully suspending his sentence (the original judgment and sentence), Defendant admitted his identity as it related to two prior felonies, and the State reserved the right to enhance Defendant's sentence as a habitual offender in the event he failed to comply with the terms of his plea agreement and probation.

---

1The Supreme Court Order set forth procedures related to the function of judicial proceedings in light of the COVID-19 pandemic. *See* Supreme Court Order, No. 20-8500-013 (April 16, 2020), https://www.nmcourts.gov/wp-content/uploads/2020/12/Order-No_-20-8500-013-Updating-and-Consolidating-Precautionary-Measures-for-Court-Operations-in-NM-Judiciary-4-16-20.pdf. At issue on appeal is the following provision: "All judges shall use telephonic or audio-visual attendance for court appearances by attorneys, litigants, witnesses, and the press unless there is an emergency need for an in-person appearance upon motion of a party. A judge may also require an in-person appearance on the judge's own initiative, without a motion by a party, provided that the judge shall confer with the parties and the chief judge of the district before proceeding with an in-person appearance. Judges may continue to take other protective measures, including the granting of continuances upon motion of any party or the judge's own motion, in appropriate cases when remote appearances are not feasible but an emergency need for an in-person appearance does not exist. Any criminal procedure rules requiring the presence of the defendant may be accomplished through remote, audio-visual appearance in the discretion of the judge, provided that confidential communication between the defendant and defense counsel is made available." Supreme Court Order, No. 20-8500-013 at 4.

**{3}**     Defendant's plea agreement stated in pertinent part that "Defendant shall receive a suspended sentencing on the condition of supervised probation," and that "the counts shall run consecutively, for all purposes, for a total of three (3) years of potential jurisdiction. At initial sentencing, the State will not pursue any [h]abitual [o]ffender [e]nhancement, though the State will pursue [such enhancements] if Defendant does not fulfill" the terms of his probation. The plea agreement further provided that both Cases 451 and 473 carried a maximum penalty of eighteen months of incarceration and a $5,000 fine. The details of the original judgment and sentence echo the plea agreement, stating that Defendant was convicted pursuant to a guilty plea in Cases 451 and 473, and specifying that "Defendant admitted that he is [a] habitual criminal offender" as to the prior felony offenses. The original judgment and sentence further provides that Defendant "waived any objection to a subsequent filing of a supplemental information and the State reserves its right to file such a supplemental information should . . . Defendant fail to comply" with the conditions of his probation. The terms of Defendant's probation, as reflected in the original judgment and sentence, included the following:

> Defendant shall serve:
>
> > [Case 473]: Eighteen (18) months of incarceration with eighteen (18) months suspended on the condition of eighteen (18) months of supervised probation.
> >
> > [Case 451]: Eighteen (18) months of incarceration with eighteen (18) months suspended on the condition of eighteen (18) months of supervised probation.
>
> The sentences imposed above shall be served consecutively to each other for a total of three (3) years, all of which is to be suspended on the condition of three (3) years of supervised probation. Alternatively, the sentence in [Case 473] shall be served consecutively to the sentence imposed in [Case 451].
>
> For [Case 473,] Defendant shall receive pre-sentence confinement from August 2, 2016, to August 17, 2016, and from May 15, 2017, to July 10, 2017.
>
> For [Case 451,] Defendant shall receive pre-sentence confinement from June 27, 2016, to June 28, 2017, and from May 15, 2017, to July 10, 2017.

**{4}**     In January 2020, the State sought to revoke Defendant's probation, alleging that Defendant violated the terms of his probation by possessing a switchblade knife, which he used to stab another individual. In May 2020, the district court held an evidentiary hearing on Defendant's alleged probation violation and the State filed a supplemental criminal information charging Defendant as a habitual offender pursuant to NMSA 1978,

Section 31-18-17 (2003), based on the two prior felony convictions. Following the evidentiary hearing, the district court revoked Defendant's probation and filed the amended judgment and sentence, in which Defendant was sentenced as a habitual offender to serve eleven total years of incarceration, less applicable credit for presentence confinement and time served. This appeal, along with both our original opinion in this case as well as our Supreme Court's subsequent opinion in *Banghart-Portillo*, followed.

**{5}** Here, Defendant contends the district court erred in amending and enhancing his sentence following his probation violation. Specifically, Defendant argues first that he completed his probation in Case 451—the first of the two probation terms that formed the basis of his suspended sentence—prior to his probation violation and, therefore, the district court no longer had jurisdiction to enhance that portion of his total sentence. Defendant argues as well that he had a reasonable expectation of finality that his probation term in Case 473 would conclude prior to the State's revocation thereof, based on the application of presentence confinement credits.2

**{6}** As to Defendant's argument regarding his probation term in Case 451, Defendant contends that he completed his probation term in January 2019—months prior to the May 2020 evidentiary hearing that resulted in the amended judgment and sentence at issue on appeal—and that the district court, therefore, did not have jurisdiction to amend or enhance Defendant's sentence as it related to Case 451. We concluded in our original opinion that neither Defendant's plea agreement nor the original judgment and sentence indicated that his sentence was to run in accordance with either individual count. Rather, we concluded that the language of both the plea agreement and the original judgment and sentence made clear the district court's intention that Defendant's probation would run in total time and the district court would retain jurisdiction over both underlying cases throughout the total three-year term of Defendant's full sentence. *See State v. Yazzie*, 2018-NMCA-001, ¶ 14, 410 P.3d 220 (explaining that "[b]ecause neither the plea agreement nor the judgment and sentence structured [the d]efendant's sentence such that the time served on probation corresponded with a particular conviction, [the d]efendant had no reasonable expectation of finality . . . or any limitation on the enhancement . . . prior to the completion of" the probation term). Now, under our Supreme Court's clarifying opinion in *Banghart-Portillo*, we once again address this argument and reach a different outcome.

**{7}** "Whether a trial court has jurisdiction in a particular case is a question of law that we review de novo." *Banghart-Portillo*, 2022-NMSC-021, ¶ 11 (alteration, internal quotation marks, and citation omitted). "Additionally, to the extent that this Court is required to interpret a plea agreement, the terms of the plea agreement are also reviewed de novo." *Id.* "In New Mexico, the jurisdiction of a trial court to enhance a felony sentence under the habitual offender statute expires once a defendant has completed service of that sentence." *Id.* ¶ 12 (internal quotation marks and citation

2Defendant asserts that the State failed to prove his identity as to his prior felony convictions that were used to enhance his sentence. The record clearly demonstrates, however, that Defendant admitted his identity as it related to his prior felony convictions.

omitted). "This jurisdictional limitation is founded upon principles of double jeopardy: once a sentence has been served, a defendant's punishment for the crime has come to an end." *Id.* (internal quotation marks and citation omitted). "Such double jeopardy concerns are only implicated if the defendant has an objectively reasonable expectation of finality in the sentence." *Id.* (internal quotation marks and citation omitted). "A defendant must establish that the district court did not have jurisdiction to impose the additional enhancement by proving two things: (1) that the defendant had an expectation of finality in the defendant's original sentence, and (2) that the expectation was reasonable." *Id.* (alterations, internal quotation marks, and citation omitted).

**{8}** In *Banghart-Portillo*, our Supreme Court clarified that the key inquiry in determining whether a defendant has a reasonable expectation of finality in their original sentence is whether the plea agreement entered into by the defendant was ambiguous as to the consequences that would occur should the defendant violate the terms of their probation. *Id.* ¶¶ 12, 17-18. "When interpreting a plea agreement, appellate courts construe the agreement's terms according to what the defendant reasonably understood when the defendant entered the plea." *Id.* ¶ 14 (alterations, internal quotation marks, and citation omitted). Under *Banghart-Portillo*, even where a plea agreement is ambiguous such that a defendant may be unable to fully and clearly ascertain the terms thereof, the district court may cure any such ambiguity. *Id.* ¶¶ 14, 19. Here, then, we must determine whether Defendant had a reasonable expectation of finality as to the completion of his probation in Case 451—that is, whether the plea agreement was ambiguous to the extent Defendant could not reasonably understand whether his probation terms for the two underlying cases would run in accordance with each count rather than total time, and if the district court cured any such ambiguity.

**{9}** To answer this inquiry, we look first to the plea agreement. Here, Defendant's plea agreement did not contain any language that made explicit whether his total probation was to run in accordance with each count rather than total time, or vice versa. While "a unitary probationary term encompassing more than one count is permissible," a defendant must be "reasonably informed of what to expect under the terms of the plea agreement and sentence." *Id.* ¶ 17. Here, not only was Defendant's plea agreement ambiguous as to whether his probation would run in accordance with each count rather than total time, it was silent as to specifically how a habitual offender enhancement, if triggered by a probation violation, would affect his sentence. To the extent the original judgment and sentence could be informative in a case such as this—that is, a case in which the State reserved the right to enhance a defendant's sentence rather than pursuing such enhancement at the time of the defendant's plea—we note that the original judgment and sentence in this case does little to clarify the ambiguity present in the plea agreement. Indeed, the original judgment and sentence does not make clear whether Defendant's probation—imposed upon the suspension of Defendant's sentence—would run in accordance with each count rather than total time, providing at times conflicting language to that end. And the original judgment and sentence is silent—other than citing the applicable statute—as to how a habitual offender enhancement would affect Defendant's sentence, including any information that such an enhancement would carry terms of incarceration. Indeed, it is not clear in either the plea

agreement or the original judgment and sentence how Defendant's probation terms or sentence should be construed, nor is it clear precisely what effect a potential habitual offender enhancement would have thereon.

**{10}** Under *Banghart-Portillo*, if we determine a defendant's plea agreement to be ambiguous, we must look beyond the written plea agreement to determine whether the district court cured the ambiguity. *Id.* ¶ 19. At Defendant's sentencing hearing, the district court confirmed whether Defendant understood the terms of his plea agreement, including the potential for his sentence to be enhanced as a habitual offender if Defendant violated the terms of his probation. While Defendant answered the district court's questions affirmatively, the district court stated the State could seek to "add those four years, and you're agreeing today not to challenge that issue down the road," ostensibly referring to the four years of incarceration that could be added to Defendant's sentence *per count*, in the event that Defendant violated his probation. We cannot conclude, under the record before us and under *Banghart-Portillo*, that the district court's single admonishment to Defendant was sufficient to clarify how his probation terms would run or to what extent enhanced sentences of incarceration would apply. *See id.* ¶ 21 (concluding that the district court cured any ambiguities present in the defendant's plea agreement by informing the defendant on more than one occasion that by admitting to prior felonies, "a four-year habitual offender enhancement [would be applied to] each of her counts, totaling eight additional years of incarceration").

**{11}** Further, as stated in *Banghart-Portillo*,

> We caution the sentencing court and counsel for the parties to ensure that it is clear to a defendant accepting a plea whether probation is to be served in a unitary block. This will provide the defendant notice that a habitual offender enhancement may apply to all counts for the duration of the probationary period if a violation occurs. We further clarify that there can be no presumption that a probationary term will be served in the aggregate absent explicit language in the plea agreement or clarification by the district court. Failing to make this specification would create an ambiguity in the plea and undermine a defendant's reasonable expectation of finality.

*Id.* ¶ 26. Under *Banghart-Portillo*—which compels the district court to specify when probation terms are to be served in the aggregate—and given the ambiguities present in the sentencing documents in this case as well as in the district court's own statements regarding Defendant's sentence, we cannot assume that Defendant's probation terms were to be served in the aggregate. *Id.* ¶¶ 21, 26. Instead, we must assume Defendant could only have reasonably expected his probation terms to be served separately according to each count. This interpretation comports with the statements made by the district court at sentencing, which specified to Defendant only that he would be subject to an enhancement of four years, rather than eight, under the habitual offender statute. We therefore hold that Defendant had a reasonable expectation of finality as to his eighteen-month probation term in Case 451—which began on July 10, 2017—being

complete on January 10, 2019, prior to his eventual probation violation, the State's pursuit of habitual offender enhancements, and the amended judgment and sentence—all of which occurred in the year 2020—such that the district court no longer had jurisdiction to enhance that portion of Defendant's sentence.

**{12}** We next address Defendant's argument regarding presentence confinements. Notwithstanding Defendant's reasonable expectation of finality as to his probation in Case 451, Defendant further contends that he had a reasonable expectation of finality that his total probation—including that resulting from Case 473—would end in March 2020 based on presentence confinement credits that he asserts the district court should have applied. Defendant argues that the court was without jurisdiction to enhance his sentence in May 2020 because presentence confinement credits would have resulted in his sentence being fully served before such time. In *State v. Nieto*, 2013-NMCA-065, ¶ 8, 303 P.3d 855, we concluded that NMSA 1978, Section 31-20-12 (1977) does not require presentence confinement credit to reduce sentences of probation as it would sentences of incarceration. To the extent Defendant asks that we reexamine *Nieto* in light of its failure to address either (1) "how presentence confinement credits affect an expectation of finality"; or (2) a "situation where applying pre[]sentence confinement credits would complete a probationer's term of probation prior to revocation"; we decline to do so considering that Defendant cites no authority to support his arguments in this regard, including his contention that *Nieto* is insufficient authority on the issue of whether presentence confinement credits apply to probation terms. *Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). We therefore hold that Defendant did not have a reasonable expectation of finality in his second probation term for Case 473 based upon presentence confinement credits because the district court is not compelled to apply such credits to terms of probation.

## II. Use of Audio-Visual Connection Pursuant to the Supreme Court Order

**{13}** Defendant argues that the district court violated his due process rights by holding his evidentiary hearing via audio-visual connection, pursuant to the Supreme Court Order. Specifically, Defendant contends that by holding the evidentiary hearing virtually, the district court violated (1) his right to effective assistance of counsel; (2) his right to confront and cross-examine witnesses; and (3) his right to a public trial.

**{14}** The Supreme Court Order states that "[a]ll judges shall use telephonic or audio-visual attendance for court appearances by attorneys, litigants, witnesses, and the press *unless there is an emergency need* for an in-person appearance upon motion of a party." Supreme Court Order at 4 (emphasis added). The Supreme Court Order further provides that the district court has discretion to order in-person appearances "on the judge's own initiative, without a motion by a party, provided that the judge shall confer with the parties and the chief judge of the district before proceeding with an in-person appearance." *Id.* Specifically related to criminal proceedings, the order provides as well that "[a]ny criminal procedure rules requiring the presence of the defendant may be accomplished through remote, audio-visual appearance in the discretion of the judge,

provided that confidential communication between the defendant and defense counsel is made available[.]" *Id.* Under these provisions, the district court has discretion to require in-person appearances within certain parameters or when moved to do so by a party asserting an emergency need to appear in person.

**{15}** In *State v. Peru*, 2022-NMCA-018, ¶ 7, 508 P.3d 907, we considered a similar challenge to the district court's compliance with the Supreme Court Order and held that the district court did not err in holding proceedings via audio-visual connection because the defendant failed to demonstrate emergency need for an in-person appearance. In *Peru*, we clarified that under the Supreme Court Order, while "the district court has discretion to require in-person appearances within certain parameters or when moved to do so by a party asserting an emergency need to appear in person[, t]he Supreme Court Order does not require the district court to grant a defendant's motion for in-person proceedings where such motion fails to present an emergency need." *Id.* Here, Defendant's motion for in-person appearance does not assert an emergency need for Defendant to appear in-person, instead merely asserting the constitutional rights Defendant claimed would be violated by appearing at his evidentiary hearing via audio-visual connection. Defendant further fails to articulate on appeal that his motion was supported by an emergency need. Because Defendant fails to establish that his motion to appear in-person was supported by emergency need, we can assign no error to the district court's compliance with the Supreme Court Order. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (explaining that "[t]here is a presumption of correctness in the district court's rulings" and that it is a defendant's "burden on appeal to demonstrate any claimed error below" (alterations, internal quotation marks, and citation omitted)). We therefore hold that the district court did not err in its interpretation of and in compliance with the Supreme Court Order.

**{16}** We note that to the extent Defendant's arguments in this regard imply that the Supreme Court Order is, itself, unconstitutional and conflict with existing precedent, we remind Defendant that we are precluded from reviewing arguments challenging the constitutionality or validity of New Mexico Supreme Court orders, and such arguments should be made directly to the Supreme Court. *See Alexander v. Delgado*, 1973-NMSC-030, ¶ 9, 84 N.M. 717, 507 P.2d 778 ("The general rule is that a court lower in rank than the court which made the decision invoked as a precedent cannot deviate therefrom and decide contrary to that precedent, irrespective of whether it considers the rule laid down therein as correct or incorrect." (internal quotation marks and citation omitted)); *see also* N.M. Const. art. VI, § 3 (providing that our Supreme Court is granted "superintending control over all inferior courts").

**CONCLUSION**

**{17}** For the above reasons, we reverse and remand to the district court to enter an amended judgement and sentence and for further proceedings consistent with this opinion.

**{18} IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**GERALD E. BACA, Judge**